## CAROLINE ADAMS *vs.* MARGARET HONNESS and others, adm'rs &c.

A parol agreement was made, between the plaintiff and the defendants' intestate, that the former should give up her home and residence in the State of New Jersey and remove to C. in the State of N. Y. with her husband, and reside there, near the intestate as long as he lived, and in consideration thereof receive the sum of $2000 upon the death of the intestate. This agreement was fully performed by the plaintiff, on her part.

*Held*, 1. That this was a valid contract, so far forth as to bind the estate of the intestate, after full performance by the plaintiff, on her part.

2. That being wholly by parol, so long as it remained executory merely, it could not have been enforced. That the intestate might have rescinded, and put an end to it, at any time before performance by the plaintiff, had he seen fit to do so. But that, he not having done so, it was quite too late, after his death, for his personal representatives to undertake to repudiate it.

3. That the consideration was sufficient to support the promise; especially after performance by the plaintiff.

4. That the promise being to the plaintiff personally, and obviously intended for her personal and separate emolument, the plaintiff, though a married woman, was clearly competent to contract.

5. That although the plaintiff and her husband were, at the time the agreement was made, residents of the State of New Jersey, yet the agreement having been made at C. in this State, it was of no consequence what the laws of New Jersey were, in respect to the competency of married women to make contracts for their separate benefit.

6. That the contract being made in New York, and to be performed here, there was no limitation in our statute which confined its operation to such married women as were residents of the State at the time their contracts were made.

The provision in section 2 of the act of the legislature, of 1860, (*Laws of* 1860, *ch.* 90,) authorizing a married woman "to carry on any trade or business and perform any labor or services on her sole and separate account," and declaring that "the earnings of any married woman from her trade, business.

labor or services, shall be her sole and separate property," necessarily includes the right, on the part of a married woman, to make valid bargains for her labor or services, before they are performed.

ACTION brought to enforce a parol agreement alleged to have been made by Conrad Honness, the defendants' intestate, to give the plaintiff $2000, in consideration of her removing from the State of New Jersey, and taking up her residence at Corning, in this State, where the intestate resided. The complaint alleged that in the month of July, 1867, the plaintiff was, and for many years prior to that time had been, a resident of the State of New Jersey, residing there with her husband, who was a brother-in-law of the defendants' intestate, being the brother of the said Margaret Honness, then the wife and now the widow of the said intestate, who had for many years previous to the year 1867 also been a resident of the said State of New Jersey, and an acquaintance of the plaintiff and her family. That at the time first aforesaid the defendants' intestate, having purchased real estate in the town of Corning, in the State of New York, and being desirous of making the latter place his permanent residence, and being desirous that the plaintiff and her family should also reside at Corning aforesaid, and near him, the said intestate requested the plaintiff, and also her said husband, to change their residence from the said State of New Jersey and make their residence in the said town of Corning, in the vicinity of the proposed residence of the said intestate, where he contemplated making his residence with his wife, sister of the plaintiff's husband. And thereupon, and in or about the month of July, 1867, at the said town of Corning, the defendants' intestate and the plaintiff entered into an agreement by which it was agreed, on the part of the plaintiff, that she would, with her said husband, move from the State of New Jersey to Corning, and there reside near the residence of the intestate; in consideration of which the defendant's intestate undertook and promised the

plaintiff to pay the plaintiff the sum of $2000. That in pursuance of said agreement the plaintiff, with her said husband, who for a consideration agreed to be paid him by the said intestate, had consented to do so, at once removed her residence from the State of New Jersey to the said town of Corning, and near and in the vicinity and neighborhood of the said intestate's residence, disposing of and removing to the latter place the property and effects of the plaintiff and of her husband; and in pursuance of said agreement the plaintiff, with her said husband, then became a resident of Corning, at the place and in the manner in said agreement provided; and the plaintiff, with her said husband, had ever since resided, and yet resided at the place aforesaid, in the said town of Corning. And the plaintiff alleged that she had in all things kept and performed said contract on her part. That the said Conrad Honness departed this life at his said residence in the town of Corning, on or about the 20th June, 1869, intestate, and letters of administration of the goods, chattels and credits of the said Conrad Honness, deceased, were thereafter duly issued to and accepted by the defendants, who had duly entered upon the trust created thereby. That the said intestate, in his lifetime did not, and his personal representatives since his death had not, paid the said sum of $2000 by said contract agreed to be paid, or any part thereof. That the same became due and payable before the commencement of this action, and remained wholly unpaid. Wherefore the plaintiff demanded judgment against the defendants for the sum of $2000, with interest thereon from June 20, 1869, with costs.

The answer was a general denial. On the trial, at the circuit, when the plaintiff rested, the defendants' counsel moved for a nonsuit, on the ground that the plaintiff, being a married woman, had no authority to make the contract set up in the complaint. The motion was denied, and the defendants' counsel duly excepted.

Adams *v.* Honness.

The defendants' counsel again moved for a nonsuit, on the ground that no consideration was shown for the promise alleged to have been made by Conrad Honness. The motion was denied, and the defendants' counsel duly excepted.

The defendants' counsel again moved for a nonsuit on the ground that the contract proved was not the contract set up in the complaint. The motion was denied, and the defendants' counsel excepted.

The judge charged the jury that there was but a single question in the case, for them; and that was, was this agreement made? That if it was, there was no question as to the amount the plaintiff was entitled to recover, viz., $2000, with interest from the intestate's death.

The defendants' counsel asked the court to charge that if the plaintiff came to Corning with the expectation that Conrad Honness should make provision to her for the payment of the $2000, she was not entitled to recover. The court refused so to charge, and the defendants' counsel excepted.

The defendants' counsel asked the court to charge, that ·if the plaintiff was, at the time of the making of the alleged contract, a resident of the State of New Jersey, she had not capacity to make the contract. The court refused so to charge, and the defendants' counsel excepted. The defendants' counsel also asked the court to charge that the statutes of this State did not extend to giving a married woman the right to make a contract to change her residence. That that was a right reserved to her husband. The court refused so to charge, and the defendants' counsel excepted.

The defendants' counsel also requested the court to charge that there was no sufficient consideration for the contract. The court declined so to charge, and the defendants' counsel duly excepted.

The jury found a verdict for the plaintiff, of $2315.

The court ordered the exceptions to be heard at a general term, in the first instance.

*Bradley & Kendall,* for the plaintiff.

I. The defendants' motion for a nonsuit was properly denied, and their exception not well taken. 1. The contract by which the defendants' intestate agreed to pay the plaintiff $2000, &c., was well made, and is valid. (*Draper* v. *Stouvenel,* 35 *N. Y.* 507.) (*a.*) The fact that the plaintiff was a married woman did not defeat her right to give her consent or make a promise to do that which was in no manner in violation of her marital relations, as the consideration of a valid engagement on the part of the intestate. (*b.*) The agreement in question was part of an arrangement to which the husband of the plaintiff was a party, and which he proposed to carry out, and the promise to pay the plaintiff was part of the consideration which operated upon the husband to make the consent and promise of his wife effectual by performance. 2. The promise of the defendants' intestate, had for its support a sufficient consideration, and the exceptions of the defendants in that respect were not well taken. (*a.*) The arrangement by which the plaintiff and her husband were induced to consent and promise to leave their home, &c., in New Jersey, and go to reside near the intestate, and the performance of that consent and promise, were sufficient to support his promise, pursuant to which they did so. (45 *N. Y.* 45.) (*b.*) And it was not only a mere harm to them, but it was, by the intestate, deemed a benefit to him by way of affording consolation and contentment to him and his wife at their new home in the State of New York.

II. The several exceptions taken by the defendants to the refusal to charge as requested, were not, nor was any of them, well taken. 1. The request to charge that "if the plaintiff came to Corning with the expectation that Conrad Honness should make provision to her for the

Adams *v.* Honness.

payment of the $2000, she was not entitled to recover," was properly refused. (*a.*) She and her husband evidently came to Corning with the expectation of the payment to her of the $2000, and it was not important whether she expected that provision would be made by him for its payment or not. She had his promise, and the request in question does not, by its terms, exclude the existence of the agreement to pay. 2. The request to charge that the plaintiff had not the capacity to make the contract, because she was a resident of the State of New Jersey when it was made, was also properly declined. (*a.*) The contract was made in the State of New York, after the intestate became a resident, and by its terms was to be performed there. The law of New York, therefore, governed in respect to the construction, validity and effect of the agreement. (*Lee* v. *Selleck,* 32 *Barb.* 525. *Curtis* v. *Leavitt,* 15 *N. Y.* 227. *Pomeroy* v. *Ainsworth,* 22 *Barb.* 127, 128. 45 *N. Y.* 113.) (*b.*) Assuming that the artificial common law disability of a *feme covert* existed in the State of New Jersey, it was not carried into the State of New York, by the plaintiff, even while she remained a resident of the former State, but the *lex loci contractus* controls in respect to the validity and effect of the contract. (2 *Pars. on Cont.* 85, 89. *Polydere* v. *Prince, Ware,* 402 *to* 409, 413.) (*c.*) But that question is of no importance. The debt or liability was contracted at the time and place of performance, and not before or elsewhere. (*Mullin* v. *Hicks,* 49 *Barb.* 250, 254. *Garrison* v. *Howe,* 17 *N. Y.* 458, 465. *Crawford* v. *Collins,* 45 *Barb.* 269, 271, 272.) And when the plaintiff and her husband entered upon the performance, they, as was contemplated, became residents of the State of New York, and as such there performed the agreement on their part. (*d.*) The arrangement having been made and performed with the consent and coöperation of the plaintiff's husband, the question of her capacity does not arise in the case. 3. The request to charge that the stat-

utes of this State did not give a married woman the right
to contract for change of residence, &c., was also properly
declined.    (*a*.) This request was a mere arbitrary propo-
sition, not applicable to the facts in this case.    (50 *Barb*.
258.    15 *N. Y.* 524.    34 *id.* 22.)    (*b*.) The agreement was
not only made with the consent and coöperation of the
plaintiff's husband, but was part of an arrangement made
by him.    (*c*.) The plaintiff did not assume to make an
agreement to change her place of residence independent
of her husband, but the husband required her consent to
induce him to remove from New Jersey, which was quite
proper, and the agreement in question was the consequence.
(*d*.) There is, therefore, no question of violation of mar-
ital duty, or of usurpation of that right of the husband
involved, and no ground to justify any pretense of that
character.

IIĪ. The several objections and exceptions to the admis-
sion of evidence were not, nor was either of them, well
taken.    The fact that John Adams was the husband of
the plaintiff did not render him incompetent to be sworn
and testify, and the objection in that respect was not well
taken.    (*Laws of* 1867, *ch.* 887.)

*Wm. Rumsey*, for the defendant.

I. The objection to the testimony of John Adams, on
the ground that he was one of the administrators of the
deceased, was well taken.    (*Code*, § 399.)    Adams came
within the letter of the statute, he being both a party and
interested in the event of the action.    He was also incom-
petent as being the husband of the plaintiff.

II. The judge erred in refusing a nonsuit, on the ground
that the plaintiff had no power to make the contract set
up in the complaint.    At common law the contracts of a
married woman are utterly void.    (1 *Black. Com.* 444.
1 *Parsons on Cont.* 345, 347, 5*th ed.*)    She can only get
the right to make this contract by virtue of the "married

Adams v. Honness.

woman's act." (4 *N. Y. Stat. at Large*, 516, § 2.) But these acts only allow them to make contracts obligatory when the contracts relate to their separate property, or to the particular trade or business in which they are engaged. (*Yale* v. *Dederer*, 22 *N. Y.* 450, 461.) And all her other contracts are void at law, and can be enforced in equity against her separate estate, provided the intention to charge that estate be stated in the contract. (*Corn Exch. Ins. Co.* v. *Babcock*, 42 *N. Y.* 613, 642. *Manchester* v. *Sahler*, 47 *Barb.* 155.) And her contract being absolutely void, it follows, as a consequence, that the contract can have no effect, and the party contracting will be discharged. (2 *Kent's Com.* 236. *Broom's Legal Maxims*, 132.)

III. There was no consideration for the contract alleged to have been made by the intestate with deceased. Honness had agreed with the husband of the plaintiff that he would give him the house and lot on which he lived if he would move out to Corning, and the agreement with the plaintiff was that Honness should pay her $2000 if she would come and stay. The agreement of John Adams to come out to Corning to live, and his moving out there, changed the plaintiff's residence, *per se*. If the husband changes his domicil, the wife is bound to follow him wherever he chooses to go. (2 *Kent's Com.* 181. *Story's Confl. Laws*, § 46. *Greene* v. *Greene*, 11 *Pick.* 410, 414.) A wife can only change her domicil with that of her husband, and cannot acquire one different from his. (2 *Kent's Com.* 431, *note*. *Jackson* v. *Jackson*, 1 *John.* 425, 432. *Vischer* v. *Vischer*, 12 *Barb.* 640, 642.) There can be no presumption that it was intended that the plaintiff should come without her husband. If Honness had attempted to make such a bargain, Adams would have had an action against him. (*Heermance* v. *James*, 47 *Barb.* 120.) It is plain, from the evidence, that this agreement with the plaintiff was entirely separate from that with John Adams.

No consideration can be implied to sustain the promise to the plaintiff, from the fact that John Adams moved out to Corning and lived there. Therefore the judge should have nonsuited the plaintiff, for the reason that there was no consideration.

IV. The judge erred in refusing to nonsuit the plaintiff, for the reason that the contract proved, was not the contract set out in the complaint. The complaint sets out an absolute promise to pay $2000. The evidence shows a conditional promise to give her a house and lot, or pay her $2000.

V. The court erred in refusing to charge that if the plaintiff was, at the time of making the alleged contract, a resident of the State of New Jersey, she had not the capacity to make the contract. There was evidence in the case tending to show that the contract, if made at all, was made in New Jersey. In that case, her capacity to contract depends upon the law of that State. (*Story's Confl. Laws*, §§ 65, 102. 2 *Kent's Com.* 458.) The common law will be supposed to be the law of New Jersey. (*Ellis* v. *Mason*, 2 *Am. R.* 81. *Holmes* v. *Broughton*, 10 *Wend.* 75. *Savage* v. *O'Neil*, 42 *Barb.* 374. *Seymour* v. *Sturgess*, 26 *N. Y.* 139.) We have seen that at common law her contracts are void.

VI. The court erred in refusing to charge that the statutes of this State did not extend to giving a married woman a right to make a contract to change her residence. That was a right reserved to her husband. (*See authorities cited to point II.*)

VII. The court erred in refusing to charge that there was no sufficient consideration for the contract. *See authorities cited to point III.*)

*By the Court,* JOHNSON, J.    The bargain finally settled and agreed upon, between the plaintiff and the defendants' intestate, as established by the verdict of the jury, was,

Adams *v.* Honness.

that the plaintiff should consent to give up her home and residence, in the State of New Jersey, and remove to Corning, in the State of New York, with her husband, and reside there as long as the intestate lived, and receive, in consideration thereof, the sum of $2000, at the death of the intestate.    This was the final agreement, which the plaintiff, as the jury have found, fully performed on her part.    The intestate was a man of considerable property, and his wife was a sister of the plaintiff's husband.    He had been a resident of the State of New Jersey, and lived near the plaintiff and her husband and family.    A short time previous to the making of the bargain in question, the intestate had taken up his residence at Corning, and desired the plaintiff's husband and herself and family to give up their residence in New Jersey, and remove to Corning, and reside near him.    For this purpose he made a proposition to the plaintiff's husband, which the latter was willing to accept, provided the plaintiff's consent could be obtained to the change.    The plaintiff, as the case shows, was reluctant to leave her home in New Jersey, but upon the intestate making her the offer, she yielded, and accepted the offer and consented to the change, which was accordingly made; the plaintiff, with her husband and family, removing to Corning, where they continued to reside near the intestate, at the place agreed upon, until his death.    The agreement was verbal, and was made while the plaintiff and her husband were on a visit at the residence of the intestate, in Corning, shortly after his removal to that town.

We think this was a valid contract, so far forth as to bind the estate of the intestate, after full performance by the plaintiff on her part.    Being wholly by parol, as long as it remained executory merely, it could not have been enforced.    The intestate might have rescinded, and put an end to it, at any time before performance by the plaintiff, had he seen fit to do so.    But he did not.    He desired

to have it performed and carried out as it was; and it is quite too late now for his personal representatives to undertake to repudiate it. (*Willetts* v. *The Sun Mutual Ins. Co.*, 45 *N. Y.* 45.) There can be no doubt that the consideration was sufficient to support the promise, especially after performance by the plaintiff.

It is contended, in behalf of the defendants, that the plaintiff being a married woman, was not competent to make a valid agreement of this kind, and that the promise, if made to her by the intestate, as alleged, was *nudum pactum*. But the promise was to her personally, and was obviously intended for her personal and separate emolument, and for that the plaintiff, though a married woman, was clearly competent to contract. By the statutes of 1860 and 1862, respecting the rights of married women, (*Laws of* 1860, *ch.* 90, and *Laws of* 1862, *ch.* 172,) a married woman is expressly authorized " to carry on any trade or business, and perform any labor or services, on her sole and separate account, and the earnings of any married woman from her trade, business, labor or services, shall be her sole and separate property." This necessarily includes the right, on the part of a married woman, to make valid bargains for her labor or services before they are performed. The bargain here was for something in the nature of a service, which the plaintiff was to perform in connection with her husband. There were two separate agreements, one between the intestate and the plaintiff's husband, and one with the plaintiff, and each, obviously, for their personal and separate benefit, respectively.

At the time the bargain in question was made, the plaintiff and her husband were residents of the State of New Jersey, but the agreement was made at the residence of the intestate, at Corning, in this State. It is of no consequence, therefore, what the laws of New Jersey are in respect to the competency of married women to make contracts for their separate benefit.

The contract was made in New York, and was to be performed here, and there is no limitation in our statute which confines its operation to such married women as are residents of the State at the time their contracts are made.

The plaintiff's husband, though a party defendant to the action, was clearly competent as a witness. There was no error in the refusal to nonsuit, at the circuit; nor in the refusal to charge, as requested, in respect to the plaintiff's residence in New Jersey at the time the contract was made. There is no evidence in the case tending to show that the agreement was made in that State. All the evidence goes to show that it was made at the residence of the intestate in this State. The charge was, in all respects, correct.

A new trial must therefore be denied, and judgment ordered on the verdict.

[FOURTH DEPARTMENT, GENERAL TERM, at Oswego, May 7, 1872. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]