HENRY MACKEY et al., Respondents, v. JULIA A. WEBB, Appellant.

*Supreme Court, Fourth Department General Term, July 20, 1889.*

1. *Husband and wife. Liability.*—A married woman is liable for work and materials furnished at her husband's request, if applied to her property in her presence and without objection; and the law will imply a promise to pay for the materials furnished and services performed on her separate property. ,
   See note at end of case.
2. *Questions of fact. Credibility.*—The credit to be given to evidence of interested witnesses is a question for the jury.

Appeal from the judgment of the county court affirming a judgment rendered by a justice of the peace.

*E. P. Webb*, for appellant.

*E. .C. Emerson*, for respondents.

MARTIN, J.—Whether the evidence was sufficient to justify the jury in finding that the labor and materials furnished by the plaintiffs were furnished to the defendant, and in holding her liable therefor, is one of the questions presented on this appeal. The work and materials were furnished at the request of the defendant's husband. Nothing was said between the plaintiffs and defendant's husband as to who was to pay therefor. The plaintiffs were employed in making improvements on the defendant's separate property. The defendant was present when the work was performed and materials were furnished, and made no objection. She at one time cautioned them about placing stone upon her garden, and she and her husband consulted together about the work and plan of the improvements to her house.

The defendant's husband testified that his wife did not authorize him to have the work done or the materials furnished. The jury evidently did not give credit to this evidence. The question as to what credit was to be given to this evidence was for the jury. Elwood *v.* Western Union Tel. Co., 45 N. Y. 549 ; Koehler *v.* Adler, 78 Id. 291; Lesser *v.* Wunder, 9 Daly, 73; Cornell *v.* Markham, 19 Hun, 275 ; Kavanagh *v.* Wilson, 70 N. Y. 177 ;. Gildersleeve *v.* Landon, 73 Id. 609 ; Brooklyn Crosstown R. R. Co. *v.* Strong, 75 Id. 591; Honegger *v.* Wettstein, 94 Id. 252 ; Becker *v.* Koch, 104 Id. 395 ; 5 N. Y. State Rep. 688 ; President and Directors of the Manhattan Co. *v.* Phillips, 109 N. Y. 383 ; 16 N. Y. State Rep. 199 ; Munoz *v.* Wilson, 111 N. Y. 295 ; 19 N. Y. State Rep. 372.

Hence the question is, whether the other evidence in the case was sufficient to uphold the verdict. In the case of Fairbanks *v.* Mothersell (60 Barb. 406–408), which was a case very similar to this, the court said : " The case stands simply upon an employment of plaintiff by the husband to

work for his wife on her separate property, without any express agreement whether he should be paid by the husband or wife. The defendant knew the plaintiff was at work there, and saw the kind of work he was doing, and the law will imply a promise on her part to pay for the services if it was, in fact, her work." This question was held to have been rightly decided in that case in Perkins *v.* Perkins (7 Lans. 27 ; 62 Barb. 539). See, also, Fowler *v.* Seaman (40 N. Y. 592), Garretson *v.* Seaman (54 Id. 652), Husted *v.* Mathes (77 Id. 388). We are of the opinion that the authorities cited justify us in upholding the judgment appealed from.

We are also of the opinion that the evidence was sufficient to sustain the judgment for the amount recovered. As no other errors are claimed by the appellant, we think the judgment should be affirmed.

Judgment of the Jefferson county court affirmed, with costs.

HARDIN, P. J., and MERWIN, J., concur.

NOTE ON THE RIGHT OF A MARRIED WOMAN TO COLLECT FOR SERVICES
RENDERED FOR, OR IN THE FAMILY OF HER HUSBAND.

The acts relating to "the rights and liabilities of husband and wife," which have enabled her to own property and carry on a sole and separate business, and perform services pertaining to such property and business, have not entirely released her from her duty to render household services for her husband, nor entitled her to demand remuneration therefor. What effect these acts have had upon this common law duty of the wife will be seen from an examination of the law and the decided cases.

*For loss of services.*—At common law when a married woman was injured in her person, she was joined with her husband in an action for the injury, and in such action nothing could be recovered for loss of service or for the expenses to which the husband had been subjected in taking care of and curing her. For such loss of service and expenses the husband alone could sue. But the statute of 1860 effected a radical change of the common law which gave the husband the right to the labor, services and earnings of his wife. Her services in the

household, in the discharge of her domestic duties, still belong to the husband, and, in rendering such services, she still bears to him the common law relation. So far as she is injured as to be disabled to perform such service for her husband, the loss is his and not hers; and for such loss of service, he and not she can recover of the wrongdoer. Brooks v. Schwerin, 54 N. Y. 343. But when she labors for another, her service no longer belongs to her husband, and whatever she earns in such service belongs to her as though she was a *femme sole;* and, so far as she is disabled from performing such service by any injury to her person, she can in her own name recover a compensation against the wrongdoer for such disability as one of the consequences of the injury, under the seventh section of the act of 1860 which provides that "any married woman may bring and maintain an action in her own name, for damages against any person or body corporate, for any injury to her person or character, the same as if she were sole," and the money recovered shall be her sole and separate property. Id. In this case the married woman was earning in a humble capacity ten shillings a day, and it was held that, so far as she was disabled to earn this sum, the loss was hers, and the jury had a right to take it into account in estimating her damages.

There is nothing in conflict with these views in the case of Filer v. N. Y. C. R. R. Co., 49 N. Y. 47. In that case, there was no claim that the plaintiff, who was a married woman, was at the time of the injury carrying on any business or trade, or engaged in any service on her sole and separate account, or that she was earning any money, which, under the laws of this state, she could claim as her own.

In Dawson v. The City of Troy, 49 Hun, 322, an action was brought by a married woman for loss of services, resulting from personal injuries. She, after dark in the evening, while walking upon River street in the city of Troy, slipped upon the ice, fell and was injured. At the time of the injury, she was working in a mill and always collected her wages, but had no property except what she earned. And it was held that these facts did not justify the court in charging the jury, that, if the plaintiff had been allowed to make bargains in her own behalf for her labor and services, and had been accustomed to accept and appropriate the compensation therefor, as she saw fit, with the approval and consent of her husband, then she could recover for any loss in this respect as there was no evidence that she was carrying on any business, trade or labor upon or for her sole or separate account, and the fact that she was collecting her wages was quite consistent with her collecting them for her husband.

*For services.*—In Whitaker v. Whitaker, 52 N. Y. 368, the facts were that the husband gave his wife a note for $4,000, the only consideration of which was that the wife, aside from her household duties, had

aided in the out-of-door work on her husband's farm, and it was given to her for the purpose of providing for her support and maintenance. The husband died, and after his death she presented this note as a claim against his estate. And it was held that she could not recover. In the opinion, the court said, that, to uphold notes given under such circumstances, would be likely to lead to the perpetration of frauds; and that if a wife could be said to be entitled to a higher consideration or compensation because she labors in the field instead of in her household, the law makes no such distinction. It never has recognized the right to compensation from her husband on account of the peculiar character of her services.

In Beau *v.* Kiah, 4 Hun, 171, a married woman, who was living with and keeping house for her husband, took care of her mother and sister who were sick at the house of her father, who promised to pay her for her services. In an action brought by her to recover for such services it was held that she was properly nonsuited, as her services belonged to her husband, and he alone could maintain the action.

When a married woman does any work for a person other than her husband, her earnings are not in every case separate. If it was so, she would be entitled to be paid by her husband when she does work for him, nurses him in sickness, or sews on his buttons in health. All business carried on, or labor performed by her, is not necessarily on her separate account.

In Cuck *v.* Quackenbush, 13 Hun, 107, an action was brought by a daughter of the deceased against his executor to recover for services rendered by her in attending upon her father during his last illness. She was then married and living with her husband. It was held that the husband, and not the wife, was the proper person to bring the action. See also Beau *v.* Kiah, *ante;* Birkbeck *v.* Ackroyd, 11 Hun, 365; 4 W. Dig. 576.

In Carpenter *v.* Weller, 15 Hun, 134, plaintiff and her husband lived for twenty-three years with and in the house of her brother. She assisted in the ordinary work of the house, in milking the cows, and in the dairy. An action was brought by her, after her brother's death, to recover from his administrators the value of her services rendered during the previous six years. And it was held that she could not maintain the action. As her husband had not relinquished the claim to her services and earnings, and she was not carrying on a business for herself, he was entitled to them and was the proper party to bring the action. See Beau *v.* Kiah, *ante.*

In Young *v.* Harcourt, 22 W. Dig. 483, a claim was presented by a married woman for board, etc, furnished defendant's intestate, who was her own brother. The latter and her husband had been in partnership, and, the summer before the brother died, they settled their

426　　　　　MACKEY *v.* WEBB.

Note on the Right of a Married Woman to Collect for Services.

matters and gave receipts. At that time the husband said that the board bill was not to be included in the settlement; that he wanted his wife to have it. And her brother said that she ought to have it. It appeared that the husband supported the family, and that the wife rendered only such services as are usual in the household. And it was held that the claim for board and washing belonged to the husband, and that his title thereto was not divested in her favor by the conversation that occurred between him and the intestate.

In Mason *v.* Libbey, 19 Hun, 119, a business for which the capital was originally furnished by the wife to the husband in 1833, was carried on by them, though it was attended to almost exclusively by the wife. With the profits of the business, land in New Jersey was purchased in 1851, and the title thereto taken in the husband's name. In 1853 the husband executed a deed of the land directly to his wife. By the laws of New Jersey, the wife under this deed could hold, but could not convey the land. Subsequently the husband and wife joined in a deed of such land, and the proceeds of such sale were paid over to and retained by the wife. And it was held that the husband might acknowledge the equitable claim of his wife in the profits of the business and transfer to her property acquired through the use of such profits.

It is doubtless true that the earnings of the wife at the time the business was carried on belonged to her husband. But, in the absence of claims or objections on the part of his creditors, he could surrender a portion of these earnings to his wife. He might acknowledge her equitable claims to them and could consent to the acquisition of property though them and to her own use. Kelly *v.* Campbell, 2 Abb. Ap. Dec. 494.

In Reynolds *v.* Robinson, 64 N. Y. 589, an action was brought by the husband to recover the value of services alleged to have been performed by himself and his wife in caring for one James Hill. Said Hill was a farmer and adopted Lovella Hughes and brought her up as his daughter. She married the plaintiff, and, after the marriage, plaintiff took Hill's farm to work on shares and subsequently purchased it. Hill continued to live with plaintiff, paying for his board. He for a long time was afflicted with a cancer, and required a great deal of care, nursing, bathing and washing of linen and clothing. Plaintiff's wife rendered these services, which were performed at the request of Hill, who promised to pay what they were worth. The services were worth $4,342. And it was held that, where a married man takes boarders into his house or converts it into a hospital for the sick, and his wife takes charge of his establishment or renders services in the house to boarders or sick persons, all her services and earnings, in the absence of proof of any special agreement, belong to her husband, and he can maintain an action to recover therefor.

Note on the Right of a Married Woman to Collect for Services.

In this case the plaintiff's wife rendered the services in his house to a boarder therein. She was engaged in no business or service on her own account. She was in charge of his household, and, as part of her household duties, rendered the services to a person in her husband's house by contract with him. She was then working for her husband and not for herself, or on her own separate account. Notwithstanding the act of 1860, she can still work for her husband, and devote all her time and service to him. These views are not in conflict with Brooks v. Schwerin, *ante*. In that case a poor woman went out to work by the day, earning wages, and it was held that the wages thus earned in labor outside of her household, and entirely disconnected from her household duties, belong to her. But if she aids him in carrying on his business, in the absence of special proof, all her services and earnings belong to him. Even under such circumstances, the husband may covenant and agree that his wife shall receive pay for her services on her own account; but in the absence of some arrangement to that effect, the inference of law and fact is that she was working for her husband in the discharge of her marital duties. Id. And even where an agreement is made between the husband and the third party that compensation for services rendered by his wife to the other shall be made by a provision in the will of the latter in favor of the wife, in case a provision is made sufficient only to compensate in part for her services, the husband has after the death of such third party, a cause of action for the balance against his personal representatives. Id.

It was not intended by anything that was said in this case to intimate that a wife could demand payment from her husband for any services rendered under the circumstances mentioned herein; but that, with his consent, she could demand and receive, and hold to her separate use, payment from the persons thus taken into his house, for any services she there rendered to them in taking care of and nursing them. Coleman v. Burr, 93 N. Y. 17.

The acts of 1848 and 1849 did not change the rule of the common law giving the husband the right to the services and earnings of his wife, in cases where she had no separate estate, and where her labor was not connected with the use of her separate property. Birkbeck v. Ackroyd, 74 N. Y. 356. This state of the law left a wife, who might be dependent upon her own labor for her support and the support of her children, without the legal power to control her earnings, and they were liable, as they were before these acts were passed, to be appropriated by the husband.

The act of 1860 was intended to remedy this defect in the prior laws, but it does not wholly abrogate the rule of the common law. She may still regard her interests and those of her husband as identical, and

allow him to claim and appropriate the fruits of her labors. The bare fact that she performs labor for third persons, for which compensation is due, does not necessarily establish that she performed it, under the act of 1860, upon her separate account. The true construction of the statute is, that she may elect to labor on her own account, and thereby entitle herself to her earnings; but, in the absence of such an election, or of circumstances showing that she intended to avail herself of the privilege and protection conferred by the statute, the husband's common law right to her earnings remains unaffected. Id.

When the labor is performed under a contract with a wife and by the contract payment is to be made to her, the inference would be strong, if not inclusive, of her intention to avail herself of the protection of the statute. So where the wife is living apart from her husband, or is compelled to labor for her own support, or the conduct or habits of the husband are such as to make it necessary for her protection that she should control the proceeds of her labor, the jury may well infer that her labor was performed on her separate account. But, where the husband and wife are living together, and mutually engaged in providing for the support of themselves and their family, each contributing by his or her labor to the promotion of the common purpose, and there is nothing to indicate an intention on the part of the wife to separate her earnings from those of her husband, her earnings, in such case, belong, as at common law, to the husband, and he may maintain an action in his own right to recover them. Where the wife is engaged in a business, as that of a trader, and it is conducted in her name, there is no room to question her right to the avails and profits. But the duty still rests upon the husband to maintain and support the wife and their children; and it is not necessary, in order to give the wife the protection intended by the statute of 1860 to hold that, irrespective of her intention, her earnings, in all cases, belong to her and not to the husband; and the language of the act does not admit of such interpretation. Id.

In Roblee *v.* Gallentine, 19 W. Dig. 153, it was held that, in the absence of an express agreement the services performed by a married woman as a member of the family of her father-in-law are impliedly gratuitous. Williamson *v.* Hutchinson, 3 N. Y. 312. But if the services are to be paid for, the compensation belongs to her husband; Coleman *v.* Burr, 25 Hun, 239; Affirmed, 93 N. Y. 17, unless he has transferred to her his right thereto, or consented that she might receive the compensation.

In Derr *v.* Cooley, 20 W. Dig. 109, a mother, in contemplation of death, consigned her child to a married woman, to be brought up by her. The husband brought an action to recover compensation out of the infant's estate for her care and support while she lived in his family.

And it was held that presumptively the services of his wife in his own household were not rendered on her separate account, and in rendering them she bore to him the common law relation, Coleman *v.* Burr, *ante* but that *prima facie* he is entitled to compensation for the care of the child, bestowed by his wife at his home; and that declarations by the wife that she, with her husband's permission, agreed to render the services gratuitously, are mere hearsay as against him.

In Burley *v.* Barnhard, 45 Hun, 588, the plaintiff was the wife of Edwin Burley, the son of Gardner Burley, defendant's testator. She presented a claim to the executor for services rendered in nursing and caring for the testator during his sickness. The claim was rejected and duly referred under the statute. The plaintiff and her husband occupied the farm of the deceased, working the same upon shares, and the deceased lived with them. The latter had a sun-stroke, sickness followed, and he suffered much pain, was irritable and required considerable attention. The plaintiff cared for him as a nurse during the time mentioned in her claim under an express contract to pay her for her services. At the time the services were performed, she was living with her husband upon the farm doing the ordinary household labors of a wife having no separate estate or business. And it was held that, under the provisions of the act of 1860, a married woman is authorized to perform labor or services and have the earnings for her sole and separate property; that this provision is not understood as wholly abrogating the rule of the common law entitling the husband to the services and earnings of the wife: and that she may still allow him to claim and appropriate the fruits of her labor, and in the absence of an election on her part to labor on her account, or of circumstances showing her intention to avail herself of the privilege conferred by the statute, the husband's common law right is unaffected. It consequently becomes a question of fact as to whether the services performed by her were rendered under an understanding at the time by the parties to the agreement that the compensation was to be paid to her for her separate use and property; and this fact has to be determined from the facts and circumstances of the case. Id.

In this case, it appeared that, two or three years prior to the sickness of the testator, plaintiff's husband had told her that she might have whatever the testator would pay for taking care of him. And it also appeared that the testator promised to pay the plaintiff, and that on one occasion he authorized her husband to say to her that, if she would stay, he the testator would pay for her services, and that the husband so stated to her subsequently. And it was held that there were some circumstance indicating an intention on the part of the wife to separate her earnings from those of her husband, which, taken

in connection with the promise of the deceased to pay her for her labor, justified a finding that she was entitled to maintain the action.

It is competent for the husband to make an arrangement with his wife by which she shall have the money paid for board and the profits resulting from the keeping of poultry.  Matter of Kinmer, 47 Hun, 635.

The earnings of the wife, obtained in the poultry business and keeping boarders, under an agreement previously made that she should be entitled to them, belong to her and form a part of her separate estate. Coleman *v.* Burr, *ante ;* Reynolds *v.* Robinson, *ante.*  As between themselves, a husband may relinquish to his wife his right to her earnings, even in his own household, so that she can hold them to her separate use.  Coleman *v.* Burr, *ante ;* Matter of Kinmer, *ante.*  In the latter case, the contract was not that the wife shall be paid for performing her duty, but that she shall have as her separate earnings the money received for the board of a person for whom she was not obliged to work, and which was to be paid to her individually.

It is undoubtedly true that a husband is primarily entitled to the services of his wife in respect to his household duties, and that she cannot recover for inability to perform those duties.

Blæchinska *v.* Howard Mission and Home, etc., 56 Hun, 322.  In such a case, the right of action will belong to the husband.  But that a married woman is entitled to recover for the loss of any wages which she might have earned outside of her household duties, where it appears that she has been accustomed to make such earnings, seems to be clearly established by the case of Brooks *v.* Schwerin, 54 N. Y. 343, where it was held that the services of a wife in the household in the discharge of her domestic duties still belongs to her husband, and so far as injuries disable her from performing such services for her husband, the loss is his, not hers.  But when she labors for another, her services no longer belong to her husband; whatever she earns belongs to herself, and so far as she is disabled from performing such services by any injury, she can recover for the loss.

The presumption which arises from the rendition of services that they belong to her husband, may be rebutted by evidence showing the special circumstances of the case and that rule should not apply.

It is sufficient to rebut this presumption, where the wife has been working for her husband, but outside of her household duties, and has been accustomed to receive pay therefor from him.

Under the law as it now stands there is no distinction between services performed for a husband and for another party, where there is a distinct agreement for compensation.  Blæchinska *v.* Howard Mission and Home, etc., 56 Hun, 322.  If a wife has been accustomed to work at a trade or a business for other parties, and has received the re-

# MACKEY *v.* WEBB. 431

Note on the Right of a Married Woman to Collect for Services.

muneration therefor, its loss can be given in evidence as an element of damage in an action for injuries caused by negligence. And so, where she is accustomed to receive compensation for the work done for her husband, there is no reason why it may not be taken into consideration by the jury in determining the amount of damages.

A husband may permit his wife to labor for her own account. He may give her the proceeds she has earned, or allow her to appropriate them to her own use. Mason *v.* Libbey, *ante;* Donovan *v.* Sheridan, 37 Super. 256.

A husband may permit his wife to engage in the service of another, for herself, on her own account, and in her own right, and he may consent to the use of her property for another's benefit, under an arrangement between the parties that recompense should be made to her. Snow *v.* Cable, 19 Hun, 280. He may permit her to engage in business on her own account, and have her own personal earnings. In such case the avails or proceeds are her own; and she may claim them, and recover them the same as though she was a *femme sole.* Id.; Brooks *v.* Schwerin, *ante;* Birkbeck *v.* Ackroyd, *ante;* Adams *v.* Curtis, 4 Lans. 164. The act of 1860 expressly empowers a married woman to labor on her own separate account, and to have the fruits of it in her own right. Snow *v.* Cable, *ante.*

In Bowers *v.* Smith, 54 Hun, 639, an action was brought for food furnished the deceased and plaintiff recovered. The facts are as follows: Prior to this action the wife of the present plaintiff recovered in an action against these defendants for services, board and rent furnished the deceased. On the trial of the former action he was a witness and testified that he was present when his wife made out her bill against the estate for the claim sought to be recovered in her action, and when she verified the same; and that he told her that if she took good care of the deceased she could have all there was for nursing and board. And it was held that it is settled that such an agreement between husband and wife is valid. It is an agreement that if the wife will act as nurse and take care of the invalid she may have or receive the compensation for her services as well as for his board. The facts show an election on the part of the wife, assented to by her husband, to board and take care of the deceased on her own occount.

It was further held in this case that a recovery by the wife on her claim for services and board of the decedent against his executors, is a bar to an action by the husband for any matter involved in the same demand.

The services of a wife, while in the discharge of her domestic duties, still belong to the husband. Hook *v.* Kenyon, 55 Hun, 598; Brooks *v.* Schwerin, *ante.* It has also been held that, where boarders are taken by the husband, and his wife takes charge of his establishment, and

thus aids him in carrying on his business, in the absence of special proof, her services and earnings belong to the husband. But even under such circumstances, the husband may covenant and agree that his wife shall receive pay for her services on her own account. Reynolds v. Robinson, *ante*. A married woman owes no duty to her husband to carry on any business in his house or elsewhere for the purpose of earning money for him. Coleman v. Burr, *ante*. When she labors for another, her service no longer belongs to her husband, and whatever she earns in such service belongs to her as though she was a *femme sole*. Brooks v. Schwerin, *ante* ; Matter of Kinmer, 47 Hun, 635. The use of her separate property belongs to the wife. Hook v. Kenyon, *ante*.

In this case, the wife was also the lessee or owner of the house in which the boarder had a room and was boarded, and therefore not only performed services in furnishing board, but also contributed the use of her separate property. Under such circumstances, it was held that she was justly and equitably entitled to share in the money to be received for such board and use of her house.

Under the circumstances disclosed in Hook v. Kenyon, *ante*, the defendant had a right and could legally make a contract by which the wife should receive a share of the proceeds of such board and use of room, for the use of her house and for her services, and since such contract was made and the plaintiff has promised to pay the defendants jointly for such board and use of room, with full knowledge of the agreement between the defendants, she cannot now insist that her debt was to the husband alone, and thus defeat the defendants' counterclaim.

Where a married woman is separated from her husband and supporting herself and apparently never receives any further attention or support from her husband after her separation from him, and while so separated enters into the service of a third person, her earnings belong to her and are recoverable by her and not by her husband. Pursell v. Fry, 19 Hun, 595; Brooks v. Schwerin, *ante* ; Adams v. Honness, 62 Barb. 326; Birkbeck v. Ackroyd, *ante*.

It is competent for her to make a bargain with a third person for her services, and for compensation therefor, and after she has performed, it is too late for him or his representatives to repudiate the bargain and refuse to pay her the fair value of her services. Pursell v. Fry, *ante*; Adams v. Honness, *ante* ; Willetts v. The Sun Mut. Ins. Co., 45 N. Y. 45.

In Coleman v. Burr, *ante*, an action was brought to set aside a deed of a farm of land made by the defendant to a third person, and by him to defendant's wife, on the ground that the deeds were made with intent to hinder, delay and defraud the creditors of the grantor, of

whom the plaintiff was one. The defendant lived upon the land conveyed and had a family consisting of himself, his wife, and two children of his wife by a former husband, his two children by his wife, and his mother, who lived in a part of his house and whom he had engaged to support in consideration of a conveyance by her to him of a portion of this farm. His mother was about eighty years of age and had an attack of paralysis which substantially rendered her helpless. The care of her devolved mainly upon the wife, and her services in such care were onerous, exacting and disagreeable. It was agreed between the defendant and his wife that, if she would undertake to discharge the duty of taking care of his mother, she would be paid by him for her labor and services the sum of five dollars a week, which was no more than a fair and reasonable compensation for such labor and services. The mother lived after this agreement was made eight years and four months, and the compensation agreed upon amounted to $2,175.

For the purpose of paying this sum, the defendant and his wife conveyed the farm to the third party for the nominal consideration of one dollar, and the grantee executed and delivered a deed of the same land to the wife for the same nominal consideration.

The contract between the wife and the husband, in reference to these services, would, at common law, have been void, as she could make no contract with her husband, and her services, whether rendered in her husband's family or elsewhere, absolutely belonged to him. Gerry *v.* Gerry, 11 Gray, 381; Cramer *v.* Reford, 17 N. J. Eq. 367; Henderson *v.* Warmack, 27 Miss. 830; Shaeffer *v.* Sheppard, 54 Ala. 244; Glaze *v.* Blake, 56 Id. 379; Duncan *v.* Roselle, 15 Iowa, 501; Hay *v.* Hayes, 56 Ill. 342. But modern legislation in this state has enlarged the powers of married women. By the acts of 1848 and 1849, the husband was deprived of that right to and control of his wife's property which the common law gave him. The purpose of these acts was to protect married women against unkind, thriftless or profligate husbands, by securing to them the separate and independent control of all their own property. But these acts went no further.

By chapter 90 of the Laws of 1860, still further protection was given to married women. It was the purpose of the provisions of this act to secure to a married woman, free from the control of her husband, the earnings and profits of her own business and of her own labor and services, carried on or performed on her sole and separate account, which at common law would have belonged to her husband. But it was not their purpose to absolve a married woman from the duties which she owes to her husband, to render him service in his household, to care for him and their common children with dutiful affection when he or they need her care, and to render all the services in her house-

28

hold which are commonly expected of a married woman, according to her station in life. Nor was it the purpose of the statute to absolve her from due obedience and submission to her husband as head and master of his household, or to depose him from the headship of his family, which the common law gave him. He still remains liable to support his wife and responsible to society for the good order and decency of his household. He is to determine where he and his family shall have a domicile, how his household shall be regulated and managed, and who shall be members of his family. The statute above referred to touch a married woman in her relations to her husband, only so far as they relate to her separate property and business, and the labors she may perform on her sole and separate account. In other respects, the duties and responsibilities of each to the other remain as they were at common law. Coleman *v.* Burr, *ante.*

Whatever services a wife renders in her home for her husband cannot be on her sole and separate account. They are rendered on her husband's account in the discharge of a duty which she owes him or his family, or in the discharge of a duty which she owes to the members of his household. Id.

A married woman cannot enforce a contract made with her husband for the payment of services rendered by her for him in his household. Coleman *v.* Burr, *ante.* And where these services have been rendered in nursing and caring for the husband, or for any of the children of the husband and wife, a contract to pay for such services will have no consideration to rest upon, and the wife cannot retain property conveyed to her in payment of such services against creditors pursuing the same. Id. No distinction can be made between such services of the wife and those which she renders for one not strictly a member of the husband's family. It does not stand upon principle, but would be merely an arbitrary one. Id. While the wife cannot demand or receive payment, as against creditors, for services rendered in the care of her husband and children, it cannot be said upon principle that she can demand and receive payment for every service she renders in caring from time to time for visitors in her husband's house upon his invitation. She cannot stipulate for compensation, whenever she aids him in the discharge of a duty which he owes to an inmate of his house, though such inmate is not strictly a member of his family; nor can she lawfully demand a share of his property for her services, whenever she nurses in sickness one of his children of a former marriage, who is a member of his family. Id. In this case, the mother was properly part of the household. The husband was under a natural, legal and contract obligation to support her. He was under just as much natural, legal and moral obligation to support his mother as he was to

Note on the Right of a Married Woman to Collect for Services.

support his own children. Id. And when, therefore, the wife renders a service in caring for her, she is engaged in discharging a duty which her husband owes his mother, and precisely the same kind of duty as he owes to his children and to his wife. In discharging this duty, she earns no money, she brings no increase to her husband's property and no income into the family. The services are rendered simply in the discharge of a duty which the husband owes to his mother, and, in rendering them, she simply discharges a marital duty which she owes to him. Id.

Whether or not a wife will do business or render service on her sole and separate account, depends upon her election, and not upon her husband's consent. Id. The acts of 1848, 1849 and 1860 should not be so construed that a married woman may make her husband her debtor every time she renders a service in his home to one lawfully there, but not strictly within the narrow circle of a normal family, consisting of herself, her husband and children. Such a construction will enable a married woman to absorb her husband's property before he knows it, and certainly before his creditors know it. Id.

A married woman owes no duty to her husband to go out of his house and render service for persons not members of his family; and she owes him no duty to carry on any business, in his house or elsewhere, for the purpose of earning money for him ; and the purpose of the statute is fully accomplished if she is permitted to retain as her own, money or property obtained by her in such business or by the rendition of such services. Id. But when she renders service in the household in the discharge of a duty which she owes to her husband, or which he owes to another, who is an inmate of his family, and he receives no pay from the person to whom the service is rendered, and is entitled to receive none, and she brings no money or property by her service to her husband, she cannot stipulate with him for compensation from him, and the services thus rendered are not under the protection of the statute of 1860. Id. This furnishes a plain, clear rule, easily applied, which will secure the relief aimed at by the statute, without any embarrassing or disastrous consequences. Id.

In Grant v. Green, 41 Iowa, 88, it was held that a contract between the guardian of an insane husband and the wife, that the latter should care for the husband and receive a certain sum for her services, was without consideration and void because she owed the service independently of any contract. The service was such an one as she owed her husband by virtue of the relation existing between them.

She had no right to refuse to perform it, nor to demand compensation for performing it.

In Filer v. N. Y. C. R. R. Co., 49 N. Y. 47, it was held that the ser-

Note on the Right of a Married Woman to Collect for Services.

vices and earnings of the wife belonged to her husband, unless she is carrying on a trade or business, or performing labor or services on her sole and separate account; and that, in an action to recover damages for a personal injury, he, and not she, is entitled to recover consequential damages from her inability to labor.

In this case an action was brought to recover damages for injuries sustained by a married woman while a passenger upon defendant's cars. As she attempted to get off, her clothes caught in the steps, and she was thrown down and dragged a considerable distance. The shock rendered her insensible for a short time ; her back was bruised and she was lame and suffered pain in her back and. hips, which has continued since without intermission. This lameness and pain at length resulted in psoas abscess, prostration and sickness. She has partly recovered, but is permanently disabled. There is no claim that she was, at the time of the injury, carrying on any business, trade or labor, upon or for her sole and separate account. And it was held that her services and earnings belong to her husband; and for loss of such services, caused by the accident, he may have an action.

The Laws of 1860 authorize a married woman to sue for the direct injury to her person or character, the same as though she was sole. But she cannot maintain such action, for even the direct and immediate damages, unless she is, on her own account and for her own benefit, engaged in some business in which she sustains a loss.

The amendatory act of 1862 does not enlarge the rights of the wife, or detract from the rights of the husband or take from him the right to recover for the loss of service of his wife, caused by the wrongful act of another. Unless the wife is actually engaged in some business' or service in which she would, but for the injury, have earned something for her separate benefit, and which she has lost by reason of the injury, she has sustained no consequential damages ; she has lost nothing pecuniarily by reason of her inability.  Filer v. N. Y. C. R. R. Co., ante.

The cases of Bertles v. Nunan, 92 N. Y. 159; Fairlee v. Bloomingdale, 67 How. 292; Kaufman v. Schoeffell, 37 Hun, 140; Noel v. Kinney, 15 Abb. N. C. 403; Barnett v. Harshbarger, 5 N. E. Rep. 718; Kniel v. Egleston, 4 Id. 573, while giving a fairly liberal interpretation to these statutes, and the rights and obligations of married women thereunder, still hold uniformly to the doctrine that, in legal contemplation, the husband and wife are still one, and, as between themselves, can only make such contracts as are necessary to protect her separate estate.

In each of the cases of Benedict v. Driggs, 34 Hun, 94; Granger v. Granger, 41 Id. 638; and Fairbanks v. Mothersell, 60 Barb. 406, it appeared that the wife was possessed of a separate estate, and the acts

there upheld were those especially relating to such estate. In the Matter of Reuter, 5 Dem. 162, the husband was a cheesemaker, and the wife aided him in carrying on this business during the season, so that the case was not distinguishable from Whitaker *v.* Whitaker, 52 N. Y. 368.