PETER REYNOLDS, Respondent, *v.* ALEXANDER P. ROBINSON et al., Appellants.

Where a married man takes boarders into his house or converts it into a hospital for the sick, and his wife takes charge of his establishment or renders services in the house to boarders or sick persons, in the absence of proof of any special agreement, all her services and earnings belong to her husband, and he can maintain an action to recover therefor.

*Brooks* v. *Schwerin* (54 N. Y., 343) distinguished.

Where an agreement is made between two parties that compensation for services rendered by one to the other shall be made by a provision in the will of the latter, in case a provision is made sufficient only to compensate in part for the services, the party rendering them has, after the death of the other, a cause of action for the balance against his personal representatives.

In an action to recover for services rendered to a boarder sick with cancer, evidence on the part of plaintiff was received, under objection, that the health of his wife was injured by the stench of the cancer. *Held,* no error; that the evidence was competent, not to lay a foundation for recovery for the loss of health, but to show the nature of the services.

Physicians who knew the value of services in nursing cancer cases, and who were acquainted with the case, were permitted to give their opinion as to the value of the services in dressing the cancer and caring for the sick person. *Held,* no error.

A physician, who had testified to his knowledge of cancer cases and of the value of services in caring for them, who also testified to having heard the evidence of other physicians who had treated and who described the cancer, and had heard the testimony of plaintiff's wife read, but who had no personal knowledge of the case, was asked: "What would be the value of the services rendered by her in nursing and dressing the cancer?" This was objected to, and the answer received under exception. *Held,* error; as the question called upon the witness to assume the correctness of, and to draw inferences from the evidence of other witnesses; that his opinion should have been obtained by stating to him an hypothetical case.

(Argued April 3, 1876; decided April 11, 1876.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, affirming a judgment in favor of plaintiff, entered upon the report of a referee.

This action was brought to recover the value of services

alleged to have been performed by plaintiff and his wife in caring for defendant's testator, James Hill.

Said Hill was a farmer living in Argyle, Washington county. In 1855 he adopted Lovella Hughes and brought her up as his daughter. She married the plaintiff in January, 1863. After the marriage, plaintiff took Hill's farm to work on shares, and in 1867 purchased it. Hill continued to live with plaintiff, paying for his board. The referee found that from the commencement of the year 1863, up to the time of Hill's death, which occurred in 1871, he was afflicted with a cancer, and by reason thereof required a great deal of care, nursing, bathing, and washing of linen and clothing. That plaintiff's wife, during this time, save for a short period before his death (when a nurse was employed), rendered these services, which were performed at the request of Hill, who promised to pay what they were worth. That the services were difficult and required great care and attention, which were given, and that the services were worth $4,342. The evidence tended to show that Hill was to compensate for the services by making a provision for plaintiff's wife in his will. He did bequeath to her $1,500.

Upon the trial, a physician called for plaintiff, after giving a description of the cancer, and stating the nature of the services performed by plaintiff's wife, was asked the question: " State what effect, if any, was produced upon the health of Mrs. Reynolds ? " This was objected to as immaterial ; objection overruled and defendants' counsel excepted.

· Several physicians, who had been acquainted with the testator, were familiar with the cancer and with the service required, and who testified to their knowledge of the value of such services, were asked how much, in their opinion, it was worth to dress the cancer each time ; and also, how much, in their opinion, it was worth to care for and nurse the testator exclusive of the dressing, and also including it ; and how much it was worth to nurse the testator and dress the cancer twice a day for a period of six years before his death. These questions were objected to ; the objections were overruled and

answers received, to which defendants' counsel duly excepted. One of the physicians, Dr. Maynard, had never seen the testator. He testified in substance that he had been a physician and surgeon twenty-seven years; that he had treated many cases of cancer, and was acquainted with the value of services in dressing them and nursing the patients; had heard the testimony of two other physicians, Drs. Martin and Moneypenny, and heard their description of the cancer; also, that he had heard read the testimony of plaintiff's wife. He was then asked: "What would be the value of the services rendered by her in nursing, and dressing the cancer of Mr. Hill, during the last six years of his life?" This was objected to by defendants' counsel upon the following grounds:

"The witness shows no knowledge of the value of such services when rendered; is not shown to know any thing of the services in question, except as instructed by the evidence read him, and is incompetent, under such circumstances, to testify what the services are worth; that such testimony, under the circumstances, is inadmissible; witness is not shown to be acquainted with the market value of the services rendered in this case; that such services are not to be reckoned in their value by the worth of each dressing, but by the general worth of the services of a nurse, competent to do all the needed dressings; that the witness must state facts and not opinions, and the question calls for no fact, but an opinion of the witness." The objections were overruled and answer received, to which said counsel duly excepted.

Further facts appear in the opinion.

*Esek Cowen* for the appellants. No implied contract will arise to pay for services rendered by and between members of the same family. ( *Williams* v. *Hutchinson*, 3 N. Y., 312; *Hall* v. *Finch*, 29 Wis., 278; 9 Am. R., 559; *Andrews* v. *Foster*, 17 Vt., 556; *Ruckman's Appeal*, 61 Penn., 251; *Duff* v. *Duffy*, 4 id., 399.) There was no express contract to pay plaintiff's wife any particular amount for her services or what they were reasonably worth. (*Shirley* v. *Vail*, 38 How., 409;

*Canger* v. *Van Aernum*, 43 Barb., 602; 32 Ind., 42; 61 Penn., 251.) The action cannot be maintained because the services were rendered under the expectation that compensation therefor would be provided for in Mr. Hill's will. (*Robinson* v. *Raynor*, 28 N. Y., 494; *Patterson* v. *Patterson*, 13 J. R., 379; *Jacobson* v. *La Grange*, 3 id., 199; *Eaton* v. *Benton*, 2 Hill, 578; *Osborn* v. *Govs. Gray's Hospital*, 3 Str., 728.) This action could not be maintained by plaintiff. (*Brooks* v. *Schwerin*, 54 N. Y., 343, 348; *Adams* v. *Curtis*, 4 Lans., 164.) The referee erred in receiving evidence as to the effect of her services on the health of plaintiff's wife. (*Baird* v. *Gillett*, 47 N. Y., 186; *Williams* v. *Fitch*, 18 id., 546; *Worrall* v. *Parmelee*, 1 id., 519.) The referee also erred in receiving the testimony of Dr. Martin. (*Carpenter* v. *Blake*, 2 Lans., 206; *People* v. *Lake*, 12 N. Y., 358.)

*A. D. Wait* for the respondent. Plaintiff could maintain this action. (*Lewis* v. *Trickey*, 20 Barb., 387; Reeves' Dom. Rel. [Parker's ed.], 138, m. p., 63; *Filer* v. *N. Y. C. R. R. Co.*, 49 N. Y., 56; *Blow* v. *Kiah*, 6 N. Y. S. C. R., 464; *Brooks* v. *Schwerin*, 54 N. Y., 348.) Upon a failure to provide for payment of the services in the will, Mrs. Reynolds was entitled to compensation from the estate. (*Robinson* v. *Raynor*, 28 N. Y., 494; 36 Barb., 128.)

EARL, J. After the marriage of the plaintiff with Miss Hughes, January 1, 1863, he took the testator's farm on shares, and continued to occupy it until 1867, when he bought it. From 1863 to the time of his death in November, 1871, with the exception of short intervals, the testator boarded with him, and paid for his board at the rate of three dollars per week. Hence, there is little room for saying that he was simply living with plaintiff as a member of his family, and that the services were rendered by plaintiff's wife gratuitously, as an adopted daughter. Besides, the referee found, upon sufficient evidence, that the services were rendered upon the express request of the testator, and his promise to pay for them.

Plaintiff's wife rendered the services in his house to a boarder therein. She was engaged in no business or service on her own account. She was in charge of his household, and, as part of her household duties, rendered the services to a person in her husband's house by contract with him. She was then working for her husband, and not for herself, or on her own separate account. Notwithstanding the act chapter 90 of the Laws of 1860, she could still work for her husband, she could devote all her time and service to him, and the circumstances of this case are such as to warrant the finding of the referee, that the services were rendered by him through her. These views are not in conflict with *Brooks* v. *Schwerin* (54 N. Y., 343). There a poor woman went out to work by the day, earning wages, and it was held that the wages thus earned in labor outside of her household, and entirely disconnected from her household duties, belonged to her. But if the husband takes boarders into his house, or converts his house into a hospital for the sick, and his wife takes charge of his establishment, and thus aids him in carrying on his business, in the absence of special proof, all her services and earnings belong to her husband. Even under such circumstances, the husband might covenant and agree that his wife should receive pay for her services on her own account; but in the absence of some arrangement to that effect, the inference of law and fact would be that she was working for her husband in the discharge of her marital duties. Hence, the referee properly held that the husband was the proper person to sue in this case.

The evidence tends strongly, if not conclusively, to show that the understanding of all the parties was that the testator was to pay for the services rendered by Mrs. Reynolds by a provision for her in his will. If the referee, upon a new trial, finds that there was such an understanding, then the main question to be determined will be, whether the provision made in the will for Mrs. Reynolds was sufficient to pay for her services. If he should find that it was, the plaintiff must be defeated. If he should find that it was not, then the plaintiff may

recover the balance, after deducting the legacy of $1,500 to his wife. It is no objection to this view that the services were rendered by his wife under the circumstances stated. Under all the circumstances, his wife was clothed with authority to contract with the testator, and plaintiff's assent to the mode of compensation must be inferred. The agreement in law, upon the assumption that the referee shall find the facts as above stated, was with the husband that the testator should pay for the services by a provision for his wife in his will. If he had failed wholly to make such a provision, it would have left the plaintiff with his entire cause of action. If he made such a provision in part only, then the husband has a cause of action for the balance. (*Jacobsen* v. *La Grange*, 3 J. R., 199; *Patterson* v. *Patterson*, 13 id., 379; *Eaton* v. *Benton*, 2 Hill, 578; *Robinson* v. *Raynor*, 28 N. Y., 494.)

The plaintiff was permitted, against the objection of defendants, to show that the stench produced by the cancer affected the health of Mrs. Reynolds. This evidence was competent, not to lay the foundation of any recovery for the loss of health, but to show the serious nature of the disagreeable service which plaintiff's wife rendered. It was competent to show not only that the stench was offensive, but that it was detrimental to health.

The plaintiff was permitted, against the objection of defendants, to prove, by Dr. Martin, how much, in his opinion, it was worth to dress the cancer each time; also, how much, in his opinion, it was worth to take care of and nurse the testator, exclusive as well as inclusive of dressing the cancer; and also, by Dr. Moneypenny, how much, in his opinion, it was worth to nurse the testator and dress his cancer twice a day for a period of six years before his death. These doctors were not asked to give their opinion based upon the evidence of other witnesses. They had been acquainted with the testator, were familiar with the cancer and its offensive nature, and with the disagreeable service required in dressing it and taking care of him, and they knew the value of services required for nursing cancer patients. Under such circumstances, their esti-

mates of value were competent to be placed before the referee.

The views thus far expressed are deemed proper with a view to the new trial, which must be granted for the error of the referee in overruling the objection to the evidence of Dr. Maynard, to which we now call attention. He testified that he had been a physician and surgeon for twenty-seven years; had treated many cases of cancer; had heard the testimony of Doctors Martin and Moneypenny, and heard their description of the cancer with which the testator was afflicted; that he was acquainted with the value of services in dressing such cases, and that he obtained his knowledge in dressing and nursing such cases; and that he had heard the testimony of plaintiff's wife read. The following question was then put: " What would be the value of the services rendered by her in nursing and dressing the cancer of Mr. Hill during the last six years of his life ?" Defendants objected to this evidence on the ground that the witness had no knowledge of the value of such services when rendered; that he knew nothing of the services, except as informed by the evidence read to him; and that he was incompetent, under such circumstances, to testify to the value of the services; that he must state facts, and was not competent to give an opinion. The objection was overruled. Doctors Martin and Moneypenny had described the cancer, and plaintiff's wife in her evidence had also described it, and mentioned the services which she rendered. The witness had never seen Mr. Hill, and knew nothing about his condition and the character of the services rendered, except from the description of other witnesses. Under such circumstances, it is settled upon authority that his opinion, as given by him, was incompetent. (*People* v. *Lake*, 12 N. Y., 358; *Carpenter* v. *Blake*, 2 Lans., 206.)

In such a case, it is not the province of the witness to reconcile and draw inferences from the evidence of other witnesses, and to take in such facts as he thinks their evidence has established, or as he can recollect and carry in his mind,

and thus form and express an opinion. His opinion may be obtained by stating to him a hypothetical case, taking in some or all the facts stated by witnesses, and claimed by counsel putting the question to be established by their evidence, and when the question is thus stated, the witness has in his mind a definite state of facts, and the province of the triers, whether referees or jurors, is not interfered with. They will determine whether the facts exist which are thus assumed, and then give the opinion such weight as they think it entitled to, with a full knowledge of the facts upon which it is based. It cannot be said that the evidence elicited by this question was wholly harmless. The witness answered, three dollars per day for the whole period of six years. Other witnesses for plaintiff placed a higher value upon the services, and witnesses on the part of the defendants, a much lower value. The referee found the value to be two dollars per day. Hence it cannot be said that he was not influenced by the improper evidence.

For this error, the judgment must be reversed and a new trial granted, costs to abide event.

All concur.

Judgment reversed.