Bradley, J.
The bone fractured was what is known as one of the condyles, and, as the defendants say, the inner condyle. This is a bone at the elbow, and belonging to the upper arm, professionally called the humerus. There is no complaint that this was not properly set, or of the result that followed at this locality; but it is claimed that the injury to the fore-arm and the disability and deformity of it and the hand were caused by the improper application of splints and bandage, and the continuance of them on the arm; and that by the bandage the circulation of the blood in that portion of the arm was cut off, and as a consequence the flesh of the arm there was deprived of sustenance, and its life being destroyed it sloughed, and the constriction of the muscles necessarily followed. The question upon the trial was whether this condition was attributable to the want of ordinary care of the defendants, or their failure to exercise the skill required of them under the circumstances. The defendants did not undertake to effectually restore the boy’s arm to a good condition, nor that no errors would be committed in the treatment, but they are deemed to have assumed to possess that degree of learning and skill which is ordinarily possessed by members of the medical profession; and undertook to use reasonable care and diligence, and their best judgment in the use and application of such knowledge and skill in the treatment of the case presented by the injury.
The evidence on the part of the plaintiff tended to prove that the reduction of a fracture of that character, and proper care in its treatment, would not endanger injury to any portion of the forearm; that the bandage was not put on to the boy’s arm in the approved manner, but was improperly rolled from the upper to the lower part of the arm, and so tightly as to prevent circulation, and that although the arm and hand became swollen, and the latter discolored, the bandage was left on when it should have been removed and the arm redressed; and that by reason of such continuance, its effect, and that of the splints, the deformed condition was produced. And it also tended to prove that the directions of the defendants were observed by the parents of the plaintiff. From such evidence the inference was justified that the defendant failed to exercise ordinary care and skill in the treatment of the case, and that they were liable. The evidence of the defendants was quite different. This was to the effect that the bandage was properly applied and that the injury in question resulted from the failure of the of the child to observe and *234 obey the defendants’ directions, in that they neglected to bring him to their office for examination and treatment, as they had specially required; that although they instructed them to have him there every day, they did not do so from the 7th of November until the 13th, and thereafter not -until the 21st, and then again the 1st and 2d of December, and not again until the 9th, and thereafter not at all. And that on each of those occasions the defendants did what was reasonably required under the circumstances by way of treatment for the difficulty. If the jury had adopted the evidence of the defendants, and that of the experts upon the facts presented by it, as the correct statement of the situation, they could not have found a verdict for the plaintiff. But there was a conflict between the evidence so given by the defendants and that of the witnesses on the part of the plaintiff in respect to material facts on the question of liability. It is unnecessary here to refer in detail to the facts which the evidence on the part of the plaintiff tended to prove further than to say that those facts, and the medical evidence founded upon them furnished for the jury if relied upon by them as true, the opportunity to find that there was a "gross failure of the defendants to give ordinary or reasonable care or skill to the case, and that such want of care was the sole cause of the lamentable condition which resulted to the plaintiff’s, arm and hand, and that such condition could not reasonably have been expected if the case had been properly taken care of. The question of fact arising upon the conflict of the evidence was one properly for the consideration and determination of the jury. And their finding must, for the purposes of this review, be deemed conclusive in that respect. The motion for non-suit was therefore properly denied.
There were several exceptions taken to the admission of evidence, requiring some consideration.
The plaintiff’s counsel put upon the stand a medical witness of experience in his profession, and asked him the question, “With ordinary and reasonable care and skill in the treatment of that arm, state whether the arm upon its being healed would have been left with the wrist deformed, the muscles and cords constricted, and the muscles and the-flesh and cicatrix there as it is ? ” And the objection, on the ground that it was “incompetent and improper,” was. overruled, and exception taken.
The witness answered, “No, sir ; there is no recognized authority in my profession that authorizes or approves a bandage commencing at the upper portion of a limb and bandaging downward.” It is contended with some force by the defendants’ counsel, that the question, and the evidence- *235 called for by it, were not competent, because it did not appear upon what state of facts the inquiry was based. Inasmuch as the witness had no personal knowledge of the case it may be that if such ruling had followed that specific objection, it could not be sustained here without difficulty. The opinion of a witness as an expert, when the circumstances are not within his personal knowledge, or derived from his actual personal observation, must be founded upon some particular state of facts of which the jury are advised, that they may intelligently appreciate the force of the opinion given.
' When the facts are conceded they must be adopted, and when they are not, the question may embrace and be upon a hypothetical state of facts which there is evidence tending to prove. Then the jury will be required to first find whether such are or are not the facts; and if they as found do not support the assumption, the opinion is entitled to no consideration. People v. Augsbury, 97 N. Y., 501; Guiterman v. Liverpool, etc., Co., 83 id., 358; Reynolds v. Robinson, 64 id., 589.
The witness probably assumed the existence of the fracture of the condyle, and no other injury requiring treatment in the outset, and no other cause for the condition in question than such fracture and its treatment. If those had been understood as the facts assumed by the inquiry, there is no apparent reason why the question would not properly have permitted an answer of the witness. And it is not unreasonable to suppose that such was understood to be its import And if the specific objection had been taken that the question did not embrace any statement of facts to give the application to the opinion asked for, it is very likely it would have been modified or the answer to it excluded.
It is quite well settled that the overruling of a general objection to a question put to a witness is not error when the tenable ground, if specifically taken, could have been obviated, or unless the evidence, in any view and in its essential nature, is not competent. Levin v. Russell, 42 N. Y., 251, 255; Daly v. Byrne, 77 id., 182; Ward v. Kilpatrick, 85 id., 417; Quimby v. Strauss, 90 id., 664; Bergmann v. Jones, 94 id., 51.
This question clearly did not come within the exception to that general rule which requires a specific objection, and upon a tenable ground, if one exists, to produce error in the reception of the evidence called for. The opinion of the witness was competent on the subject involved. And in the view taken by the contention, a modification of it only was required, so as to include in the question the facts upon which the inquiry was founded. The evidence was then sufficient to permit that to be done.
*236 There were some other exceptions taken to the admission of evidence of experts, to which the same remarks are applicable, and therefore no error can be predicated upon the rulings and exceptions.
Another doctor was permitted to answer against the defendants’ objection and exception, the question: “In a fracture of the humerus, when they apply a splint on the inside of the arm—the anterior portion of the arm—state whether the lower termination of it would come about the point where the cicatrix is, if applied upon a child of that "kind ? ” And the answer given, was: “Yes; the lower end of the splints would come about there; the lower end of it about the middle third of the lower arm.” The admissibility of this evidence in view of the form of the question, is not entirely clear, as it did not require the opinion of an expert to locate the termination of the splints that were put upon the plaintiff’s arm, nor was it founded upon any appearance necessarily produced by the splint that had been applied.
It may, therefore, be considered somewhat speculative as applied to this case, and is applicable to what is usual in the extent of its application in a case of that character. Strohen v. New York, Lake Erie and Western Railroad Co., 96 N. Y., 305.
But as it appeared that splints were used in the treatment of this arm and they were produced in court, and their use and application explained, the evidence could not have prejudiced the defendants. And it was in view of the production of the splints there, that the trial court received the evidence. The proper length and application of splints for the plaintiff’s arm was a matter of professional judgment and experience, and treating this evidence as directed to that inquiry, it may be deemed competent. And in respect to their length, and the extent of their application on the forearm in this case, the evidence tended to support the practice adopted by the defendants.
The evidence as a whole does not necessarily impute to the defendants any want of learning, or skill in their profession; but that which tends to charge them with liability goes to their want of the attention and care reasonably required of them, to the treatment of the plaintiff’s injury, of which the jury were permitted to say they assumed the professional charge and control.
The examination of all the exceptions taken by the defendants, discloses no error to the prejudice of the defendants.
The judgment and order should be affirmed.
Smith, P. J., concurs.