1. CLAIM AGAINST DECEDENT—DEVISE IN PAYMENT.
    Where a devise of a life estate in the property of testatrix, as compensation for services rendered and board furnished her by the devisee, equals or exceeds the amount of devisee's claim, such claim is extinguished.

2. GIFTS CAUSA MORTIS—DELIVERY OF KEYS.
    The fact that testatrix, during her last illness, gave devisee some keys, and told him "everything was to be his," does not establish his claim of a "present gift" of the household goods, nor, in the absence of proof, will the keys be presumed to give access to the goods.

Proceedings for the judicial settlement of the accounts of John Edwards, as executor of the will of Helen E. Somerville, deceased.

*W. M. Skinner,* for executor.　*John C. Small,* for John W. Edwards, a residuary beneficiary.　*Gabril Reeve,* for William K. Davison and Lizzie Edwards, residuary beneficiaries.

COFFIN, S.　The executor claims, and has endeavored to show, that it was understood between himself and the deceased that he was to be compensated for the board furnished and the services rendered by him, not by a mere provision in the will of the testatrix, but by the entire devise and bequest of all of her property; and that her household furniture and other movables in her house were actually given to him by her in her lifetime; that he has not, by her will, received the promised compensation, and hence seeks to recover his claim out of the estate.　There is no direct evidence as to the value of the house and lot, but it is stated to rent for $250 per annum.　It is admitted that the value of the personal estate was about $2,300, exclusive of furniture, etc.　The petition to prove the will represents the whole value of the estate as not exceeding $7,000.　The approximate value of the real estate, then, may be assumed to be about $4,700.　In reference to the mode and measure of compensation, Sarah E. Edwards, a daughter of the executor, testifies that on one occasion the deceased said to the executor that she would give him everything after she was through with it, and on another occasion that there was no necessity for his furnishing a bill for his services in planning the house she built; that he should have it when she was through with it; she would leave everything to him.　The house was built in 1884; the will was made in 1886.　There is no proof as to the time when these two declarations were made, except that it may be inferred that the one relating to a bill for the plans of the house occurred after these plans were prepared by the executor, the claim presented by him embracing a charge for those plans, and the will was made subsequently, in and by which she did leave everything to him for life instead of absolutely.　Considering the facts that the witness gives what purports to be a declaration made by the deceased; that she is a daughter of the executor, testifying in his behalf; and the possibility of a mistake by her in detailing the language used,—in connection with the fact that the will, made not long thereafter, does give everything to him for life,—the strong probability is that in so doing she did what she had previously expressed an intention to do.　The testimony of the witness Ruxton, if admissible, does not materially alter this view.　There can be no doubt that the provisions of the will, in that respect, were intended as a compensation to her brother for all he had done for her in the way of board furnished and services rendered.　The rule is that, where such an understanding exists between the parties, if she had failed wholly to make such a provision, then the executor would have been left to enforce the whole amount of his claim; that, if the provision were sufficient to cover a part only of the claim, he could recover the balance; but, where it equals or exceeds the just amount of it, the claim is extinguished.　*Jacobson* v. *Le Grange,* 3 Johns. 199; *Eaton* v. *Benton,* 2 Hill, 578; *Robinson* v. *Raynor,* 28 N. Y. 494; *Reynolds* v. *Robinson,* 64 N. Y. 589; *McRae* v. *McRae,* 3 Bradf. Sur. 199.　Even if it were true that the testatrix had promised, in consideration of the board furnished and services rendered, to give the whole estate to her brother absolutely, and has failed to do so, his measure of compensation would not be the value of the whole estate, but' what he could show they were worth, and so now, in this case, he can recover nothing, if the provision made for him is equal in value to the amount of his claim.

In the view taken, it is deemed unnecessary to determine what is the just amount of the claim presented, although it is open to criticism, for the reason that the provisions of the will seem to make adequate compensation for all

that is claimed. It was stated that the house and lot rented for $250 per annum, and the annual interest on the personal estate, estimated at $2,000, at 5 per cent, would be $100. The testatrix died in May, 1888, and the life beneficiary has thus enjoyed the use of the property for a year and a half. Deducting for taxes, etc., it is estimated he has already received about $400. There is no evidence as to his age, but, assuming it to have been 70 at the time of the death of the testatrix, the gross value of his life estate in the property, stated to be worth $7,000, would be upwards of $2,000. This, of course, exceeds the amount he claims, and deprives him of any right of recovery.

The claim that the household furniture, etc., was given to the executor by the deceased, cannot be sustained. The evidence does not indicate a present gift,—a divesting herself of the title and conferring it upon him. Catherine Williams, who was the nurse employed during the last illness, saw deceased take some keys from under her pillow, and heard her say, "Take those keys." He took them, and "unlocked a closet off of the room, and I think he unlocked a trunk or something, and at one time, I think, took out papers, or a box, or something." Surely, this, of itself, is altogether insufficient evidence of the gift of anything. Other evidence was given by the executor's daughter, Sarah E. Edwards, in regard to the delivery of the keys. She says "She gave him the keys, and told him that everything was to be his." This proves no present gift, but rather has reference to the future. Besides, there is no evidence as to what keys they were of which the last witness speaks. We cannot, in the absence of proof, assume that they were keys, the possession of which gave access to the household goods of the deceased. The testimony in regard to the value of the personal effects, so claimed to have been given, is conflicting, ranging from $100, as stated by the executor, to $475, as estimated by his son, a contestant. It may be fairly fixed at $200, and must be accounted for accordingly.

Other objections to the account are overruled. As the executor has failed in his contention, he can be allowed costs out of the estate only, as in case of no contest. The contestants are allowed their costs out of the estate, to be taxed.