In the Matter of the Will of JOHN CARD, Deceased.

*Supreme Court, Third Department, General Term, December 28, 1889.*

1. *Will. Insanity.*—Suicide is competent evidence upon the issue of insanity but is not presumptive proof of it.
2. *Same.*—The suggestion of insanity is greatly inpaired where a man has reached the stage when the usual tenor of his long life is wholly changed, when no resources of enjoyment are left, and the present is full of vexations and the future without hope or promise and there is nothing to enjoy in this, and nothing to fear in the next, life.
3. *Evidence. Expert.*—Where hypothetical questions present no full and fair view to the mind of the expert, the answer may be judged by the omissions in, as well as by the contents of, the hypothesis.

Appeal from the decree of the surrogate of Rensselaer county, admitting to probate an instrument purporting to be the last will and testament of John Card, deceased. The formal execution of the instrument was duly proved, but its probate was contested by the appellant upon the ground of the alleged want of testamentary capacity of the testator.

*James Lansing*, for appellant.

*R. H. McClellan*, for respondent.

LANDON, J.—We are satisfied that the testator had sufficient testamentary capacity. He was not insane. He was not suspected to be insane by the members of his family or by anyone else during his lifetime. He committed suicide, leaving a will which disappointed the expectations of the contestant. He had had occasional epileptic attacks. He was eighty-one years of age at the time of his death, had, with the exception of the last three years of his life, been an active, industrious, economical and cheerful man.

He was a farmer. His wife died five years before him. Two years later he sold his farm and went to live with his daughter and her husband, paying them $3,000, in consideration of their undertaking to support him during his life. He had about $7,000, besides. From a life of activity he thus passed to one of comparative inaction, and he became discontented, occasionally fretful, morose and melancholy. It is urged that he was laboring under delusions; we see no evidence of it. Doubtless he was often wrong in his constructions of facts and his conclusions upon them, but his preceptions were of realities, not of the images created by a diseased mind. He made his will about twenty days before his death. It was drawn pursuant to his dictation. It is clear from it and from the other testimony that he clearly comprehended the extent of his estate, and of the claim of his children and their descendants upon his bounty. Five of his children were living and two were dead, leaving children and grandchildren. With the exception of the contestant, his daughter, with whom he was living and to whom he had given $3,000, for his support, his will divides his estate among his living children and some of the descendants of the two who were dead. About three years before his death he had made a will in which the same children were provided

ded for and the contestant omitted. That will was destroyed when this was made. The present will was obviously made upon full deliberation, and with the conviction that he had, by the provision allowed to the contestant for his support, discharged in full her claims upon his bounty.

Great stress is laid upon the fact that he committed suicide. But it is obvious that he grew weary of life and resolved to end it. His frequently expressed belief was that there is no hell except the grave. Suicide is competent evidence upon the issue of insanity, but only as a circumstance in connection with others, and is not presumptive evidence of it. Best on Evidence, 729; Ray on Insanity, 487.

The Penal Code declares the attempt to commit suicide a felony, § 178, thus presuming sanity. In life insurance cases the recovery, when death is caused by suicide, often turns upon the issue whether suicide was the result of sanity or insanity. Breasted v. Farmers' Loan & Trust Co., 8 N. Y. 229; Manhattan Life Ins. Co. v. Broughton, 109 U. S. 121.

The natural love of life and the " dread of something after death " are usually such deterrents as to suggest insanity when suicide is attempted or accomplished. But the suggestion is greatly enfeebled when a man has reached that stage when the usual tenor of his long life is wholly changed, when no resources of enjoyment are left, when the present is full of vexations and the future without hope or promise; with nothing to enjoy in this life and nothing to fear in the next. If, then, a man deliberately, by his will, bestows his estate among his kindred, according to his affection or sense of duty, and takes his life, it is plain that he thus acts, not because he is destitute of reason or of the capacity to reason, but because he does reason and has the courage of his convictions. The epileptic attacks with which the testator was occasionally seized do not appear to have been very severe. They certainly do not appear to have weakened the force of his will. His memory was weaker than in his earlier life and less coherent, but the testimony in this respect falls far short of showing any unusual degree of impairment.

Note on "Hypothetical Questions."

Hypothetical questions embracing the most marked fee-. bleness, changes in his habits, his apathies, petulancies and peculiarities, including his epileptic seizures and his suicide were asked of several physicians, and they answered that they thought him insane. His neighbors and acquaintances who had known him intimately for many years, had conversed with him often, some of them on the very day of his suicide, had never observed anything in his action or speech which had occured to them as being irrational. His suicide was wholly unexpected by all who knew him. Such hypothetical questions present one side of the man's life; they present no full and fair view to the mind of the expert. Without questioning the fairness or intelligence of the answer, we may gravely question the fullness and fairness of the hypothesis, and may judge the answer by the omissions in, as well as the contents of, the hypothesis. We prefer to judge the man by the testimony of his neighbors and acquaintances.

Some exceptions are taken to the rulings of the surrogate upon the testimony offered. We find none which call for a reversal of the decree.

The decree of the surrogate is affirmed, with costs.
LEARNED, P. J. and INGALLS, J. concur.

---

"NOTE ON HYPOTHETICAL QUESTIONS."

Hypothetical questions submitted for expert opinion must be based upon proof in the case, and must not go outside of the facts as to which some evidence has been given, and which can be assumed as a possible truth. People v. Smiler, 125 N. Y. 717; 3 Sil. (Ct. of App.) 309.

In People v. McElvaine, 121 N. Y. 250, the defendant was convicted of the crime of murder in the first degree. The sole defense was the alleged insanity of the accused. Upon the trial, the district attorney put to an expert witness, called for the prosecution, the following question : " Now, are you able to say whether, in your judgment, based upon all the testimony, the acts of the defendant on the night of the homicide, the testimony

as to his past life given by the witnesses in his defense, and based upon the whole case, whether this young man is sane or insane ?" Before answer-ing, the district attorney was permitted to add as follows : "Based upon the whole testimony of the prosecution and the defense, including the hypothetical question put by defendant's counsel, and everything that you have heard sworn to here, now will you answer the question ?" And it was held that this question was improper. The witness was thus per-mitted to take into consideration all the evidence in the case given upon a long trial extending over many days, and, upon so much of it as he could recollect, determine for himself the probability or improbability of their statements, and, drawing therefrom such inferences as, in his judgment, were warranted by it, pronounce upon the sanity or insanity of the defend-ant. He was by the question put in the place of the jury and was allowed to determine upon his own judgment what their verdict ought to be in the case. Id.

The rule as to the conditions governing the formation of hypothetical questions to experts has frequently been discussed and illustrated in the reported cases in the court of appeals. In People v. Barber, 115 N. Y. 475, the court says: " The opinion of medical experts as to the sanity or insanity of the defendant, based upon testimony in the case, assumed for the pur-pose of the examination to be true, was undoubtedly competent. So, in connection with their opinion, they could be permitted to state the reasons upon which it was founded. But inferences from facts proved are to be drawn and found by the jury, and cannot be proved as facts by the opinion of witnesses."

In the case last cited, the defense was insanity. Medical experts, aside from their opinion as to the main issue, were permitted to give their opinion as to the effect of certain facts proved upon the question of guilt or inno-cence and of the mental operations of the defendant, to wit, that certain facts indicated consciousness, apprehension, untruthfulness, etc., and it was held that the evidence encroached upon the domain of the jury and exceeded the reasonable boundaries of expert evidence.

In the case of People v. Lake, 12 N. Y. 358, the court did not concur in the opinion written, but placed their decision upon two propositions, one of which was that the court of oyer and terminer erred in permitting physi-cians, who did not hear all the evidence relating to the mental condition of the prisoner, to give opinions as to his sanity, founded on the portion heard by them. The question was not mooted or decided whether, in case they had heard all of the evidence, they could give opinions based thereon, but it passed off solely upon the question whether a person, who had heard only a part of the evidence upon the trial, could give an opinion based upon the portion of the evidence so heard by him. It is true that an implication may be drawn from the decision that, if the witness had heard the whole evidence, he might properly have given his opinion. But that question was not in the case, and it falls far short of being an authority upon the point discussed.

The case of Sanchez v. People, 22 N. Y. 147, is to a similar effect. Two

opinions were delivered in that case, but neither of them secured the concurrence of the court. The decision was placed upon the determination in the Hartung Case, and had no reference to the question under consideration. So the case of People v. Thurston, 2 Park. 49, was in the supreme court, and failed to secure the concurrence of the court in the grounds upon which it was decided.

A hypothetical question, which is based partially upon facts which have been proved, partially upon assumed facts as to which there is no proof, and partially upon portions of the testimony of other witnesses given on the trial which the witness has heard, is improper. Matter of Mason, 60 Hun, 46. Such questions are allowed to be put to experts, but the hypothesis upon which they are examined must be based upon the facts admitted or established by the evidence, or which, if controverted, the jury may legitimately find on weighing the evidence. Id.; People v. Augsbury, 97 N. Y. 591. In such a case, it is not the province of the witness to reconcile and draw inferences from the evidence of other witnesses, and to take in such facts as he thinks their evidence has established, or as he can recollect and carry in his mind, and thus form and express an opinion. Matter of Mason, ante ; Reynolds v. Robinson, 64 N. Y. 589; Guiterman v. Liverpool, etc., Co., 83 Id. 358; Hagadorn v. Conn. M. L. I. Co., 22 Hun, 249.

In Connelly v. Man. R'y Co., 60 Hun, 495, an action was brought for personal injuries. Upon the trial of the action, a physician testified that he first saw the plaintiff about two weeks after the accident, and that he was then suffering from meningitis. He then stated that he had heard the plaintiff's testimony as to the manner of the accident, and was allowed to testify that the injuries received in the manner described by the plaintiff were quite sufficient to produce the results described by the witness upon his examination. And it was held that the testimony was improper and should have been excluded. An expert witness should not be permitted to give an opinion based upon facts testified to by others, but must, if required, give the precise state of facts, as he supposes and believes such facts to be, upon which he rests his opinion, or must give his opinion in answer to a question stating such facts. Id.

No doubt it is not an uncommon practice in examining medical witnesses to ask them whether they have heard the testimony of the person who has deposed to the circumstances under which the injuries were received, and, if he answers in the affirmative, to inquire as to his opinion upon the testimony so given. This practice, however, which is usually resorted to for the purpose of facilitating the progress of the trial, can only be justified where no objection is made. Id. The party, against whom the evidence is offered, is entitled, if he so desires, to have an explicit statement, made to or by the expert witness, of the precise state of facts upon which his opinion is based. Id.

Hypothetical questions are allowed to be put to experts. People v. Augsbury, 97 N. Y. 501. But the hypothesis, upon which they are examined, must be based upon facts admitted or established by the evidence, or which, if controverted, the jury might legitimately find on weighing the evidence.

Note on "Hypothetical Questions."

Id. Purely imaginary or abstract questions, assuming facts or theories for which there is no foundation in the evidence, are not admissible as matter of right. Id. On cross-examination, such abstract or theoretical questions, not founded upon the facts of the case on trial, may be put for the purpose of testing the knowledge and information of the witness as to the subject upon which he has been examined, and his competency to give the opinion which he may have pronounced on his direct examination. Id. But the allowance of such questions, like other collateral inquiries touching only the credibility of the witness, rests in the discretion of the court, and, when the discretion is fairly exercised, it is not error to exclude them. Id.; Dillebar v. Home L. I. Co., 87 N. Y. 79; Labeau v. People, 34 Id. 223. If the rule was otherwise, there would be no limit to the cross-examination of a witness called as an expert. It could be protracted as long as the fertility of the imagination of the examining counsel might enable him to suppose cases, and the mental and physical powers of endurance of the witness would permit him to frame answers. Id.

Questions put to expert witnesses, which require them to determine in their own minds what the evidence was which had been given, and then to form and express their judgment upon their own conclusions as to the nature and effect of that evidence, are improper and should not be allowed. Uransky v. Dry Dock, etc., Co., 59 Hun, 626. The jury in this form of inquiry are utterly unable to apply the answers obtained from the witnesses to the case they have to consider and decide, for they have no means of knowing what views were entertained by the witnesses as to what the evidence was which had been previously given, and upon which their opinions were based. Id. In the cases of Gregory v. N. Y., L. E. & W. R. R. Co., 55 Hun, 303 ; People v. McElvaine, 121 N. Y. 250, this mode of eliciting evidence has been condemned as entirely improper.

In Reynolds v. Robinson, 64 N. Y. 589, a physician testified to his knowledge of cancer cases and of the value of services in caring for them. He also testified to having heard the evidence of other physicians who had treated and described the cancer. He had heard the testimony of plaintiff's wife read, but had no personal knowledge of the case. He was asked : " What would be the value of the services rendered by her in nursing and dressing a cancer ? " This was objected to, and the answer received under exception. And it was held that the allowance of the question was error.

The opinion of an expert may be obtained by stating to him a hypothetical case, taking in some or all of the facts stated by witnesses and claimed, by the counsel who put the question, to be established by their evidence. When the question is thus stated, the witness has in his mind a definite state of facts, and no interference is had with the province of the triers, whether referees or jurors. Id. The latter will determine whether the facts exist which are thus assumed, and then give the opinion, the weight to which they consider it entitled, with a full knowledge of the facts upon which it is based. Id.

In Guiterman v. Liverpool, etc., Co., 83 N. Y. 358, an action was brought to recover damages, alleged to have been caused by defendant's negligence,

to certain goods which were shipped on board its vessel. Upon the trial of the action, the plaintiffs called an expert who testified that he had heard the testimony read to the jury on the previous day, and the protest, and the testimony of one or two of the witnesses, and the circumstances as detailed by them. He was then asked : "Under the circumstances detailed by these witnesses and in the protest, and when a steamship with a collier alongside of her, begins to drag, with the wind blowing heavily in squalls from the south-west, and the collier working and chafing against the steamship's side, what, in your opinion, should have been done by the persons in charge of the steamship ?" The evidence was objected to by defendant's counsel, was overruled by the court, and exception taken to such ruling and decision. It was held that the question put called for the opinion of the witness, and allowed him to say what, under the circumstances, should have been done. In order properly to form an opinion, the witness should have full information as to the ascertained or supposed state of facts upon which his opinion is based. He cannot be called upon to determine the truth of the facts sworn to before giving such opinion. Id. Nor can the witness be called upon to testify unless a clear state of facts appear. Id. He cannot draw inferences from the evidence of other witnesses, and form an opinion from such facts as he can recollect. Id. ; Reynolds v. Robinson, 64 N. Y. 589; McCollum v. Seward, 62 Id. 316; Carpenter v. E. T. Co., 71 Id. 579. When the facts are controverted or are not entirely clear, a hypothetical question may be put, based upon the facts claimed to have been proved by the evidence. Id.; Freeman v. Lawrence, 11 J. & S. 288; Dolz v. Morris, 10 Hun, 201; Hoard v. Peck, 56 Barb. 202. An expert cannot be called upon to testify as to his opinion upon evidence given by other witnesses, which covers a great variety of facts and calls for a comprehensive and critical view of the testimony given and the inferences to be drawn from the evidence. Guiterman v. Liverpool, etc., Co., ante.

In Gregory v. N. Y., L. E. & W. R. R. Co., 55 Hun, 303, it was held that an expert witness cannot be asked to give an opinion based upon what he has heard other witnesses testify, but that such testimony must be based upon a hypothetical question containing facts which are assumed to have been proven. It is not the province of the witness to reconcile and draw inferences from the evidence of other witnesses, which will necessarily allow him to determine what facts were established by the evidence so far as he can recollect it. Id.

In Page v. Mayor, etc., 57 Hun, 123, an action was brought to recover damages resulting from personal injuries. The plaintiff called a physician, by whom he had been examined subsequent to the injuries. The witness was asked this question : "Did you hear his (plaintiff's) testimony upon the witness stand to-day ?" To this the witness replied: "Most of it; yes, sir." The witness was then asked: "Take such a fall as he describes here, resulting from a collision of two cars, and of the symptoms following that fall, he having theretofore been a sound and healthy man, can you state with reasonable certainty that the consequences that have followed are natural and usual ? " It was held that the question was incompetent. The ques-

tion is neither hypothetical in any respect nor founded upon all that the witness said, but upon " most of it," which leaves to conjecture how much of it the witness considered to be " most of it" and whether, if he had heard the whole of it, there would have been any qualification of his answer. Id. The answer was predicate of the plaintiff's statement, only so far as the witness had heard it. It was not in form such as allows a party to attain the result by adopting a hypothetical question. This is the extent only to which an inquiry is allowed. Id. If it was otherwise, the witness would be, to a certain extent at least, permitted to usurp the functions of the jury. Id. The examination of a medical attendant is always, in such case, as to what was the condition of the patient after the accident. He is not called upon to state whether that condition is the natural and usual consequences of the collision. Id. He may state facts and circumstances, but not conclusions, especially when founded upon evidence heard only in part. If an expert, he may be asked for his opinion upon a supposed state of facts presented in a question. Id. The cases, relating to this line of examination, carefully preserve the rights of the party to be affected by it from any infraction of the province of the jury as indicated by the rule, which is positive and unyielding, that such questions must be put hypothetically, or in an equivalent form, and thus leave the facts stated in the question to be found by the jury before the evidence elicited can be applied. Id.; Uransky v. Dry Dock, etc., Co., 44 Hun, 119; Gregory v. N. Y., L. E. & W. R. R. Co., 55 Hun, 303; Turner v. City of Newburg, 109 N. Y. 309.

The opinion of a witness as an expert, when the circumstances are not within his personal knowledge or derived from his actual personal observation, must be founded upon some particular state of facts of which the jury are advised, so that they may intelligently appreciate the force of the opinion given. Boldt v. Murray, 41 Hun, 638. When the facts are conceded, they must be adopted. But when they are not conceded, the question may embrace and be upon a hypothetical state of facts, which there is evidence tending to prove. Id. In such case, the jury will be required to first find whether such are, or are not, the facts. And, if they as found do not support the assumption, the opinion is entitled to no consideration. Id.