# CHARLESTON.

HOTSINPILLER *v.* HOTSINPILLER *et als.*

Submitted June 10, 1912.    Decided October 14, 1913.

1. LIMITATION OF ACTIONS—*Action on Contract.*

   If by the express terms of an oral contract for continuous services, or the clear understanding of the parties, payment therefor is to be postponed until the death of the promisor, or provision made therefor in his will, right of action on the contract does not accrue to the other party until the death of the promisor, and the statute of limitations does not begin to run until the event contemplated happens. (p. 825).

2. CONTRACTS—*Construction—Payments.*

   Though such contract does not so expressly provide for postponement of payment, yet if from the peculiar circumstances of the parties, the dealings between them, their confidential relations, and the declarations of the promisor, it clearly appears that such was the understanding by which they were to be bound, the contract should be so interpreted and enforced. (p. 825).

(LYNCH, JUDGE, absent).

Appeal from Circuit Court, Preston County.

Bill by Wm. G. Hotsinpiller against George W. Hotsinpiller and others. Decree for defendants and plaintiff appeals.

*Modified and Affirmed.*

*Warder & Robinson,* for appellant.

MILLER, JUDGE:

Plaintiff, claiming to be a large creditor of the estate of his father, James W. Hotsinpiller, deceased, sued John A. Hotsinpiller, executor, and others, in equity, seeking to charge that estate with the payment of his debt of $2,938.40, which his bill alleges was for labor performed for his father during his life time, "in the year 1909, and for several years prior thereto," and which he alleges was never paid by decedent nor by his executor since his death. There is no allegation of an express contract that said labor was to be paid for at testator's death, or provision made therefor in his will. It is alleged that the personal estate is insufficient to pay the debts, and that the executor has failed to bring any suit within the time prescribed by statute, to subject the real estate to the payment of the debts, wherefore plaintiff's suit.

The executor demurred to and answered the bill, the answer putting in issue the validity of the alleged account, and pleading the statute of limitations. The demurrer was overruled, and issue being joined on the general replication to the answer, the case was referred to a commissioner, to report the debts, and other matters usual in such cases.

On the evidence introduced the commissioner found and reported, among other things, a debt in favor of plaintiff for $939.00, for five years services, 1,565 days, at sixty cents per day. No exceptions were filed to this report, and the court decreed that sum to plaintiff, who has appealed to this court to reverse that decree because he was not allowed and decreed the full amount of his claim. No exceptions were filed to the report, but the legal question relied on is fairly presented on the face of the record. The commissioner reported that if the statute of limitations did not apply, which with other questions he submitted to the court, plaintiff would be entitled to his whole

claim, $3,038.40, unless he should be charged with his board, clothing, &c., during the five intervening years he was an invalid and was maintained by testator. By its decree complained of the circuit court evidently concluded that the statute of limitations applied, for it adopted the finding of the commissioner and decreed to plaintiff only $939.00.

The only appearance or brief filed here was by counsel for appellant. The proposition on which they rely to reverse the decree is that plaintiff's claim did not accrue until after the death of his father, and that the statute of limitations did not begin to run until the debt then matured. If the contract was as is claimed, right of action did not accrue until the death of the testator, and the proposition is well founded in law. *Cann* v. *Cann,* 40 W. Va. 138, and *Cann* v. *Cann,* 45 W. Va. 563, and the decisions of other courts referred to in those cases.

It is not specifically alleged, that by the terms of the contract for services, payment was to be made at death, or provision made therefor by will; but will not proof of such contract support the contract alleged? We are disposed to hold that it will. We recently decided that an oral contract to make a will, if certain and definite in terms, and upon sufficient consideration, if equitable. is valid and enforceable against the estate of a decedent, as any other valid contract. *Davidson* v. *Davidson,* 72 W. Va. 747, decided at the present term and not yet reported. See, also, the authorities cited therein for the proposition. In *Reynolds* v. *Robinson,* 64 N. Y. 589, that court held that where the provision in a will was not sufficient to cover compensation for services rendered and to be so provided for, the party rendering the service had cause of action against the personal representatives of decedent for any balance due him on his contract. The authorities are numerous for the proposition that where the agreement is for services to be compensated by provision in a will, and the will makes no such provision, an action at law lies to recover the value of such services. Besides our cases and other cases cited, see monographic note to *Johnson v. Hubbell,* (N. J.) 66 Am. Dec. 773, 785, where most of the cases are collated. See, also, JUDGE HOLT's concurring opinion in *Cann* v. *Cann,* 40 W. Va., at page 157, on the question of the statute of limitations.

The cases referred to constitute ample grounds for the conclusion that where there is a contract for services to be rendered, payment to be postponed until the death of promisor, or to be provided for in his will, the cause of action does not accrue until the death of the deceased promisor, and action may be brought at any time thereafter within the period prescribed by the statute. For a full discussion of this subject, see *Stone* v. *Todd,* 49 N. J. L., 280, et seq. In that case it is said to be "well settled that where there is no express agreement as to the time or measure of compensation for long-continued services, the law will not imply a postponement of compensation until the termination of the employment, but for the purpose of determining when the statute will begin to run, the hiring will be regarded as from year to year." Citing *Beach* v. *Mullin,* 5 Vroom 343; *Davis* v. *Gorton,* 16 N. Y. 255. But as the remarks of the learned judge following the above quotation are peculiarly pertinent to the case here, we·may with propriety quote them also. He says, page 283: "The jury have found that there was an understanding between the plaintiff and the deceased that she should remain in charge of his household during his life, without any claim or demand for services, and at his death, if she survived him, she should be compensated liberally for her services, either by will or by a charge against his estate. The verdict can only be sustained upon such finding.. The facts are very close on this point. It is not entirely clear that if she had left before the death of the intestate an action for services rendered would have been suspended until his death upon any express agreement between them. The result seems to have been reached by the jury from the peculiar circumstances of the dealing between the parties and their confidential relation, showing that there was such an understanding, by which the plaintiff and the decedent were bound, and his distinct statement that she should be well paid at his death, and similar expressions testified to by witnesses."

As in the New Jersey case, so in this, the point, on the statute of limitations, is close. If we overrule the lower court and give plaintiff a decree here for the full amount of his claim we must find that the contract for services, which was fully proven, and as to which there was no evidence to the contrary,

also includes a contract or understanding for postponement of payment till death, or provision made for same in decedent's will. Can we reach this conclusion from the evidence? There is little, if any, evidence of an express contract to postpone payment until the death of the promisor, or to provide for plaintiff in his will, so as to suspend the running of the statute. The plaintiff, whose evidence, being objected to, we cannot consider, swears that he had a contract with his father for sixty cents a day, and that he worked seventeen years for him "at sixty cents a day by the year," making $2,938.40, subject to credits $154.20; that he had been paid each year on the account small amounts, out of which he had provided his clothing. He was then asked: "Q. What did your father ever tell you about paying you? A. He said he had fixed in his will for me to get my money. That is what he told me, he made a provision in his will." A disinterested witness, Adolphus Evans, swore that the testator stated to him that he had plaintiff to stay with him at fifty or sixty cents a day, that plaintiff was a good boy and that he would keep him with him while he lived, that testator had made it appear to him as near as he could come at it that he had made provision for plaintiff in his will, and intended to keep him on the place there with him. Witness said this conversation took place when he tried to buy the timber on the testator's land, and who declined to sell, giving as a reason that he had arranged things. W. A. Rodeheaver, another disinterested witness, who tried in 1907, to purchase a part of decedent's land, swears, that testator declined to sell, giving as a reason "John has got my money and he pays the taxes on the land, keeps them paid up, and he says I don't owe very much, except Willie (meaning plaintiff) and he says I have made provision for him, but he didn't say what provision or anything of the kind; didn't talk any more about it." Rachel Sheets, a sister of plaintiff, says, with reference to the alleged contract: "I sat right by father when he hired him; he said he would give him Sixty Cents a day the year through, wet and dry, and provide some of his clothes if he needed them." "Q. And how about board? A. Board went in too, he said." On cross-examination: "Q. You don't mean to say he undertook to board him, furnish clothes and pay his Sixty Cents? A. Yes, sir, that is

what he said; he said he could have some clothes out of the trade. Q. As a matter of fact, he has had all the clothes he needed from the farm, or from your father's property; has he not? A. I suppose so." This witness also swears that for five or six years intervening between the date of the alleged contract and her father's death, plaintiff was an invalid from a sunstroke, and sore finger, during which time her father was cared for by her mother, her brother Lee and plaintiff, but that the latter earned his board and that they could not have gotten along without him. No claim is made by plaintiff for compensation during these five years. Mrs. Nose, another sister, after referring to services rendered by plaintiff, his work on the farm, and his labor in caring for the old people day and night testified: "Q. What did your father ever say about paying Will for his services? A. He said he provided for him in the will; and he said it would be good when he was gone; it would all come in a lump together. Q. Did your father ever tell you what he was to pay Will for his services? A. Yes, sir, time and time again; he was to give him Sixty Cents a day and clothing," and that he was to have his board. Mrs. Hose, another sister, after proving the declarations of her father that he had hired plaintiff at sixty cents per day, testified: "Q. Do you know whether or not your father paid Will for his services? A. He didn't pay him very much; he said he couldn't; he had his taxes and things to raise, he couldn't pay these other men. Q. Did you ever hear him say how much he was to provide for Will? A. He told me, after he was sick two or three years, he told me had made a will; I went up to wash for him during this time the will should have been made; I went up on Tuesday, he made it along through the week, and he told me he made a will and I says to him, 'You did?' and he says Yes, I have made a will, for I am paralyzed, and I provided for William G. Hotsinpiller in my will, for I owe him, and he said he wanted us children to see Will was paid; Then on Thursday before he died, he died on Sunday he called me to the bed and told me as near what he owed, who all he owed, and he wanted them paid to the half cent, and he said he provided in his will for his debts to be paid; and he wanted William G. Hotsinpiller paid, and if there was anything left he wanted me to have equal with the boys. Q.

That was on Tuesday before he died?   A. . Yes, sir, that was Sunday night."

The contract for sixty cents per day is fully proven.   Indeed this seems to be conceded.   No proof was offered to the contrary. But how about the contract to postpone payment, or to provide therefor in testator's will?   Unless we can find from the evidence, the situation of the parties at the time of the contract, and afterwards, and the declarations of the old man respecting provisions to be made for plaintiff, that the parties regarded the employment for a continuous service, to be paid for at the death of decedent, or that he was to specifically provide for such payment by testatorial devise, the statute would run against the debt, and the decree below would have to stand.   As noted we can not consider plaintiff's evidence.   If we could he does not distinctly state that it was a part of the contract, that payment was to be postponed, or provided for by will.   He does say, that, subsequently, his father told him that he had provided for payment in his will.   The will, however, shows no specific provision therefor.   A general provision is made for payment of all the testator's debts, as follows: "I direct that all my just debts be paid as soon after my decease as conveniently may be, and to that end charge my whole estate, real and personal, with the same."   The will was made in 1897; testator survived until 1909, more than ten years thereafter.   After making small money bequests to his daughters he provided that the rest of his estate, real and personal, should be divided equally between his four sons, George, John, William (the plaintiff), and Samuel.

We do not think the evidence clearly proves a contract for provision by will, such as could be specifically enforced against decedent's estate.   But does not the evidence prove a contract for continuous service and a mutual understanding between the parties that payment was not to be made until testator's death, and that no action would accrue to plaintiff until that time? Testator had little money, not sufficient to pay all his taxes, as the evidence shows.   He had no source of income except what was produced from his farm, mainly by the labors of plaintiff, which at times had to be divided between the farm and the care and nursing of his father and mother.   If plaintiff had sued before his father's death would not a good defense have been

an understanding or agreement to postpone payment until that time? We think the evidence would have sustained that defense. From the whole record it is quite evident, we think, that the parties did not contemplate payment before the death of testator. His financial condition made that impossible. This is manifest from the numerous declarations of deceased in his life time. Nothing of consequence was paid. Only small sums, about sufficient to clothe plaintiff, were ever paid. We think, therefore, we must find from the evidence, that there was a mutual understanding between the parties that plaintiff was to labor on, under the contract, and wait for his pay until his father's death, and thereafter look to his estate, under some general or special provision to be made in his will. If this was the understanding or agreement, under which plaintiff worked for twenty years, or thereabouts, and devoted himself to the care and keeping of his old parents, while his brothers and sisters married and went away in other pursuits, we think the cause of action did not, under the authorities cited, accrue until the death of his father, and that the statute of limitations should not be applied. The decree below, therefore, will be modified so as to give plaintiff the full amount of his claim, and when so modified it will be affirmed.

*Modified and Affirmed.*