## GOREY, Plaintiff-Appellee, v. GREGG, Exr., Defendant-Appellant.

Ohio Appeals, Second District, Madison County.

No. 155.   Decided October 31, 1945.

C. C. Crabbe, Columbus, Justin L. Sillman, Columbus, for plaintiff-appellee.

D. H. Jackman, London, for defendant-appellant.

MONTGOMERY, J., of the Fifth Appellate District, sitting by designation.

## OPINION

By MILLER, J.

This is an appeal on questions of law from the Common Pleas Court of Madison County, Ohio. The action was one wherein the plaintiff sought to recover from the executor of the estate of H. Alice Calhoun the reasonable value of services rendered by the plaintiff to the decedent during a period extending over seven and one-half years up to the decedent's death.

The petition was one based upon an express contract for the reasonable value of the services performed. The first defense admitted all formal allegations and denied generally the contract, the services and the value. A second defense alleged the kinship of plaintiff and decedent as niece and aunt, respectively; that their mode of living constituted plaintiff a member of decedent's family; and that any services rendered by plaintiff in the household were gratuitous and for the mutual benefit of both parties.

A general denial was filed in reply.

Near the close of the plaintiff's case in chief she moved for leave to amend at bar so as to declare upon an implied contract instead of an express contract. Leave was granted over defendant's objection.

A will executed by decedent in 1929 and making some provision for plaintiff, but without any statement as to its being compensation for services rendered, was admitted in plaintiff's behalf over defendant's objection. A second will of decedent, executed in 1941 and making some different provision for plaintiff, but also without any explanation as to its being compensation for her or an acknowledgement of services rendered, was received in plaintiff's behalf over the defendant's objection. Plaintiff also offered a deed, executed by decedent, conveying a farm to James and Ruby Timmons, who were also beneficiaries under the will, and reciting a consideration of "one dollar" and "other consideration" and executed in 1943. This deed made no mention of plaintiff and did not mention compensation or services. It was admitted over defendant's objection. Defendant moved for a directed verdict at the close of the plaintiff's evidence and was overruled. Evidence was then offered by the defendant and there being no rebuttal, defendant renewed his motion for a directed verdict at the close of all the evidence. This motion was overruled and the matter submitted to the jury which returned a verdict for the plaintiff. Motion for new trial was overruled and judgment entered on the verdict.

The record discloses that the decedent was an old and feeble woman, being eighty-five years of age at the time of her death. Her husband died before her and left her some real estate, including farms as well as other property. She was all alone and had no close relatives, although she had several nephews and nieces. She had no one to take care of her but was greatly in need of assistance. Shortly after her husband's death, she tried to get her niece, the plaintiff, to come and live with her in the country and look after her, for which she offered to give the plaintiff the sum of $1000.-00. This offer was not accepted by the plaintiff. Thereafter, from time to time leading up to the middle of November, 1936, the decedent tried to get the plaintiff to come and look after her and on several occasions the decedent exhibited a will and discussed its provisions with the plaintiff under which provisions the decedent left her, upon the death of testatrix's husband, a half interest in all her real estate and farms during her life and to her heirs, as well as a cash bequest of $1500.00. This will was executed on the 18th day of October, 1929. Later, the decedent acquired a house in West Jefferson and the plaintiff and her husband moved in with her. The husband moved out of the house by the end of the year of 1936, but the plaintiff stayed on looking after the decedent up to the time of her death on January 8, 1944.

In the fall of 1937 when the plaintiff threatened to leave, the decedent said, "You are going to stay here with me. I need you and you stay here and take care of me and I will see that you always have a home and are taken care of." At another time the decedent said, "she could do more for her than Mr. Gorey (her husband) could, and she intended to."

The decedent depended upon the plaintiff's aid and care to such an extent that she would not even let her go and look after a relative's wife during a temporary illness, the decedent saying that there would be no one to take care of her if the plaintiff went away. The record discloses that the character of the services which the plaintiff had to perform for the deceased was burdensome and loathsome, and that everything conceivable was done to make the last seven and one-half years of the decedent's life as pleasant and comfortable as possible. The plaintiff took care of the house and did all the washings which were quite voluminous, as the decedent suffered from some kidney ailment by which she unfortunately lost her control. No beneficences, which are usually exhibited between members of a family, ever flowed from the decedent to the plaintiff. Once when the plaintiff

required the services of a physician the decedent notified him that she was not responsible and would not pay the bill. The record also discloses that on one occasion when the decedent had a guest for dinner, the plaintiff was not allowed the same food as was consumed by the decedent and her guest.

The first assignment of error is that there was error in permitting the plaintiff to amend her petition at bar so as to change her cause of action from express contract to an implied contract. The original petition alleged in part, "* * * H. Alice Calhoun agreed with plaintiff that if the plaintiff would move into the home of the said H. Alice Calhoun, look after the household duties and care for the decedent during her lifetime she would pay plaintiff what said services were reasonably worth * * *."

During the progress of the trial, counsel for the defendant questioned whether the plaintiff was proceeding on the theory of quantum meruit or recovery under an express contract. In order to clarify this proposition the plaintiff was granted leave to amend at bar, the amendment alleging in part "at the instance and request of the said H. Alice Calhoun the plaintiff moved into the house of the said H. Alice Calhoun and at her instance and request looked after the household duties and cared for the decedent during her lifetime; and at her instance and request, the plaintiff became the household servant and took care of the house, * * *," etc.

It is urged by the appellant that this amendment had the effect of substantially changing the plaintiff's claim for services rendered and therefore was not permitted under the liberal provisions of §11363 GC. It is also claimed further that it necessarily follows that the plaintiff's claim for her services rendered as asserted by the amendment was never "presented to the executor for allowance", since the claim for services rendered which the executor admits was presented to and rejected by him, must be presumed to be a claim for services rendered under an express agreement.

Under the provisions of §11363 GC the trial court may, in its discretion, allow amendment before or after judgment in furtherance of justice when the amendment does not substantially change the claim. The plaintiff's claim was for a named sum as compensation for services rendered decedent in the nature of household work and nursing care over a stated period of time. The evidence offered in support of that claim proved an implied agreement to pay. The claim was identical whether the evidence had established an implied or express agreement to pay for the services rendered. The

amount was the same. The parties involved were identical. The services rendered were the same and they were rendered for and on behalf of and at the request of the same person.

In the case of **Bolsinger v Halliday, 4 Oh Ap 311,** syllabus 1, the Court said:

"The substitution, by apt allegations in amended petition, of an express agreement for an implied agreement to do the same thing, is not a departure from the cause of action in the first instance, but merely provides a different method of proving the action already in court."

In discussing the subject of express and implied contracts in **9 O. Jur. 240,** the following statement is made:

"A contract can be made either expressly or by implication. The form of the contract, whether implied or express, has been said to be only the mode of proving the cause. It is evidence that the cause of action exists, but it is not itself the cause of action. A written instrument is not the contract; it is merely evidence thereof * * *. An express contract and a contract implied in fact differ only in the mode of proof."

It is our conclusion that the amendment allowed by the Court during the course of the trial did not change the cause of action and the amendment was proper. Therefore, the claim that was presented to the executor under §10509-112 GC was the same claim which is the basis of this action and the same was properly submitted.

The second, third and fifth assignments of error are that the trial court erred in admitting the wills and deed in evidence.

We are of the opinion that these exhibits were properly admitted. They were offered as reflecting on the question of whether the plaintiff went to the decedent's home merely as a matter of "family relationship" and rendered service as an incident thereto without any expectation of compensation, or whether the plaintiff was induced to come to look after the decedent not as a matter of rendering gratuitous services but with the intention on her part to receive and on the decedent's part to compensate her for those services. If they reflected at all on that issue all were to be considered together, and all were to be considered in the light of the other expressions of intention by the decedent to compensate the plaintiff for the services rendered. A party may not successfully complain of error unless his interests are prejudiced

thereby. The trial court carefully charged the jury on the subject of these exhibits in the following language:

"Certain exhibits have been introduced in evidence in this case. I refer to the wills and deed. I charge you that those documents are not in issue in this case as to their merit or failure as such, but they are admitted and may be considered for one purpose, and that only, and that is, that they may be considered in so far only as they reflect, if they reflect at all, on the issue in this case as to whether or not the services of the plaintiff were rendered gratuitously."

It is, therefore, our conclusion that these exhibits were properly admitted in evidence. Moreover, their admission was not prejudicial to the defendant. They showed substantial bequests to plaintiff, and by the latter will which was probated, she received $1000.00 and a residuary share. Defendant could well argue that she had been compensated.

The fifth and last assignment of error is that there was error in overruling defendant's motion for a directed verdict at the close of plaintiff's evidence and again at the close of all the evidence.

Counsel for the appellant contends that a verdict should have been directed on the theory of "family relationship" or failure to prove "a meeting of the minds" on an implied contract. These were both factual questions properly submitted to the jury and which the Court covered fully in its charge. The charge was fair and complete. The jury's verdict was supported by the evidence. We find no prejudicial error, and the judgment of the trial court is affirmed.

MONTGOMERY, J., concurs.
HORNBECK, P. J., dissents.

HORNBECK, P. J., dissenting:

It is violating no confidence to say that in reaching a decision in this case the members of this court have had difficulty and no one of us has that certitude of opinion which ordinarily attends in disposing of appeals.

The errors assigned upon which I differ from the conclusion of my associates are those relating to the admission of the two wills of testatrix, her deed to James C. Timmons and Ruby Timmons and the charge of the court as to the purpose for which they were admitted. Plaintiff's action as eventually submitted to the jury was upon an implied contract on quantum meruit.

The action, being on the quantum meruit, was for the reasonable value of services rendered under the contract pleaded which, manifestly, was the full value of such services. Plaintiff prayed for a judgment of $5575.70 with interest and the verdict and judgment in her behalf is in that sum in its entirety.

The instruments under consideration are plaintiff's Exhibits A, B, and C. The first is the will and testament of Mrs. Calhoun, executed on October 18, 1929. By the third item thereof a life estate in all real estate of testatrix was given to her husband, Alvah Calhoun, and at his death a remainder in said estate "to James Timmons and Hannah Gorey (plaintiff herein) in joint ownership during their natural lifetime, then at their death to their legal heirs". By the fourth item, subject to the life estate of the husband, Hannah Gorey was bequeathed the sum of $1500.00. On or about November 15, 1936, plaintiff went to live with Mrs. Calhoun. The husband of Mrs. Calhoun had died, probably in March, 1936, and the first conversation between plaintiff and testatrix, during which the will was displayed, occurred about a month after his death but the will had been executed almost seven years prior to this conversation.

The second will was dated June 6, 1941, a little less than five years after plaintiff had gone to live with testatrix. By the terms of this will, under the third item thereof, Hannah Timmons Gorey was bequeathed $1000.00 and by the twelfth item it was provided that testatrix's farms and her house in West Jefferson should be sold and the proceeds from these properties divided, share and share alike, among nine named beneficiaries, one of whom was Hannah Timmons Gorey. The deed from Mrs. Calhoun to James C. Timmons and Ruby Timmons was dated July 28, 1943, and transferred two farms in Jefferson Township, Madison County, Ohio, one 90.40 acres, the other of 92.35 acres.

There is no claim that the plaintiff had any knowledge during the lifetime of Mrs. Calhoun of the execution of the second will or the deed.

The second will has been probated and the estate is being administered by defendant executor.

The nature and extent of testatrix's estate does not appear nor did the jury have any means by which it could determine the relative value of the bequest and devise to plaintiff in the first will as compared to the bequest and devise in the second will and the jury was specifically charged that the "documents are not in issue * * * as to their merit or validity as such, * * *". Testatrix died January 8, 1944.

Independent of the wills and the deed, there is substantial controversy in the record upon every issue made by the pleadings. The nature and extent of the services rendered, the state of health of Mrs. Calhoun, whether or not she did her own work, the extent to which she was incapacitated by her sickness, are at variance upon the record; whether plaintiff was a member of the family and maintained her separate establishment, in part, at least, or was in the service of Mrs. Calhoun, is at issue. So that, upon the whole record, the effect which the jury gave to the wills and the deed may well have been the deciding factor in the verdict. If they were improperly admitted, it was prejudicial to the defendant.

In **Richards v Cleveland Jewish Orphan Home, 22 Oh Ap 475**, it is held that error is prejudicial unless there is some fact in the record which affirmatively shows that it is not prejudicial. Ridenour v Biddle, 10 O. C. C. N. S. 438, 30 O. C. C. 237, holds "where error is shown, prejudice is presumed". See also—

Lake Shore & M. S. R. Co. v. Litz, 18 O. C. C. 646; 6 O. C. D. 285.

Gentile v. Cincinnati Street R. Co., 4 O. N. P. 9; 6 O. D. N. P. 111.

**Baldwin v Bank of Massillon, 1 Oh St 141.**

**Lowe v Lehman, 15 Oh St 179.**

**Taylor v Boggs, 20 Oh St 516.**

**Board of Education v Mills, 38 Oh St 383.**

At the time that the first will was exhibited to the plaintiff by Mrs. Calhoun, it had been a completed and executed instrument for seven years. Any purpose which actuated Mrs. Calhoun in making the plaintiff her beneficiary had operated and had been effective long before the conversations during which the will was displayed. The jury was given the right to draw an inference that from the exhibit of this will to plaintiff under the circumstances she was to be paid for the services to be rendered. What inference may be drawn from these facts? To indulge any other than that it created a friendly atmosphere between the parties because of the beneficence of Mrs. Calhoun already indicated, as appeared in her will, is but speculation. It is not urged that Mrs. Calhoun said, nor may it be implied, that if plaintiff would come to live with her she would retain the provisions of her will as they then were and would leave it unchanged at her death, or, that if plaintiff would not come to live with her she would revoke the will. To permit the jury in this situation to consider the wills "as they reflect, if they reflect at all, on the issue whether or not the services of the plaintiff were rendered gratuitously" was pre-

judicial to the defendant for the reason that it was permitted to draw an inference which could not logically be drawn. We might conclude at this point because if the first will was inadmissible, the second will and deed could not be although the converse of this proposition is not true.

The existence of the second will and the deed were never known to the plaintiff. The second will, if it had any probative effect at all, which on the cause of action as pleaded it did not, permits the inference that the original contract incident to the first will, if made, had been disregarded by testatrix and that she had modified this agreement to the extent that she changed her bequest and devise to the plaintiff in the second will. The deed did not reflect at all upon the questions whether or not the services rendered by the plaintiff to Mrs. Calhoun were gratuitous or otherwise. Its only effect was to show that testatrix had thereby decreased the value of her estate and of the devise in Item 12 of the second will.

If I am mistaken in concluding that the wills should not have been admitted and it be assumed that the first will has some value upon any material element in this case and that it tends to establish that the benefits thereof were to be assured to the plaintiff if she came to live with Mrs. Calhoun then the plaintiff may not be heard to say, if testatrix performed her part of this agreement, that her estate should not have the benefit to the extent of that performance.

Let us assume that an express oral agreement was established whereby for the services to be rendered by plaintiff, Mrs. Calhoun was to make a will containing the identical provisions found in her first will. Upon her death such a will had been executed, was probated and her estate was administered according to her will. Could plaintiff maintain a recovery for the full value of services rendered to decedent without regard to the benefits which she received under the will made pursuant to the contract? We believe the answer is obvious.

In Reynolds v. Robinson, 64 N. Y. 589, 593, 594, it was held, that where services are rendered in consideration of the promise to compensate therefor by bequest to the person rendering them, and a bequest is in fact made, an action may nevertheless be maintained to recover for the value of the services rendered, and in such action the main question to be determined is whether the provision in the will was sufficient to pay for the services. If it is, the plaintiff must be defeated in the action. If not, then plaintiff is entitled to recover the balance after deducting the legacy.

This case is not in the class of **Walters, Admr. v Heidy, 1**

**Oh Ap 66,** the **Ortman case, 17 Abs 525, Miner v Greve, Admr., 30 Abs 93,** and **Henderson v Stroup, Extr. 32 Abs 605,** for the reason that the cause of action upon which plaintiff here elected to proceed is not based upon a promise to will property for services to be rendered. In these cases there was a promise to pay for services rendered by the making of wills and a failure on the part of the promisor to perform. In the instant case, if the second will means anything, it shows a performance by the promisor pro tanto of the agreement to make a will, a theory which must be given consideration if the wills and deed are to be brought into evidence.

There cannot logically be a separation between the contract to make a will, if any, implied from the transaction respecting the first will and one element of that contract, namely, a purpose on the part of the testatrix to pay for the services by making the will. This is true even though a suit in specific performance or an action for damages may not be maintained on the contract to make a will. Herein is found further prejudicial effect in admitting the first will as it may reflect upon the question whether or not the services were rendered gratuitously. A juror could not have made such distinction. In fact, it may not be made.

When this first will was admitted, followed by the introduction of the second will and the deed, it was prejudicial to the defendant because in all probability the jury reasoned that under the first will, if not revoked, plaintiff would have received a much greater proportion of decedent's estate than she received by the second will which became effective and that the deed removing two farms from the decedent's estate further reduced that which she would have received had the contract been carried out. Of course, there is nothing in the record upon which the jury could properly make determination as to the comparative value of the first devise as related to the devise to plaintiff in the second will because neither the legal effect thereof nor the value of the respective devises was not known to the jury.

Fell, Admr. v Carter, 16 O. C. C. N. S. 241, is cited and discussed by counsel. In this case the action was to recover compensation for personal services rendered a deceased person but there was no claim that there had been any promise to compensate by will. The defense sought to show payment for the services by introducing the will of decedent wherein the sum of $400.00 was given to the plaintiff. Manifestly, the will was not admissible. The analogy to be drawn between the cited case and the instant cause is that here the cause of action

apparently proceeds upon the theory of an implied contract to pay for services rendered without respect to the wills. If the case was restricted to this theory, then the defendant could not offer provisions for plaintiff in the second will in partial or total satisfaction of plaintiff's claim. Plaintiff, however, bringing the wills into the case, requires that if it be properly presented to the jury that the full effect of the second will and the provisions thereof under all the circumstances be adjudicated under a proper charge. The jury had not sufficient evidence nor sufficient information as to the law controlling its determination of the issues brought into the case by the admission of the wills.

The judgment should be reversed and the cause remanded with opportunity to the parties to try the case upon the proper theory, so that the court could have opportunity to fully acquaint the jury with the law controlling its deliberations.